Luzstella ARBELAEZ, Appellant,

v.

JUST BRAKES CORPORATION,
Appellee.

No. 03–03–00587–CV.

Court of Appeals of Texas,
Austin.

May 20, 2004.

Rehearing Overruled Aug. 12, 2004.

Christopher H. Sapstead, Mark W. Crampton and Clint A. Harbour, Crampton & Associates, P.C., Austin, for appellant.

Craig A. Courville, Brantley Ross Pringle Jr., and Michael Thompson Jr., Wright & Greenhill, P.C., Austin, for appellee.

Before Chief Justice LAW, Justices KIDD and B.A. SMITH.

## OPINION

MACK KIDD, Justice.

This is a summary judgment case. We are asked to review the grant of a traditional[1] motion for summary judgment in favor of appellee, Just Brakes Corporation. The district court ruled as a matter of law that Brian Paul, an employee of Just Brakes, was not within the course and scope of his employment at the time of an automobile collision with appellant, Luzstella Arbelaez. Concluding that Just Brakes failed to prove as a matter of law that Paul was not acting within the course and scope of his employment, we reverse and remand.

## BACKGROUND

In January 2001, Paul, a mechanic for Just Brakes, arrived at work at approximately 6:45 a.m. Within a few minutes, according to Paul's deposition testimony, the shop manager gave Paul his "first assignment" of the day, which was to pick up breakfast for himself, his manager, and his other co-workers at a nearby McDonald's restaurant. While exiting the Just Brakes parking lot in his own vehicle, Paul collided with Arbelaez.

Arbelaez filed a negligence lawsuit against Paul. After some discovery, she amended her petition to name Just Brakes as an additional defendant, claiming it was vicariously liable for Paul's negligence. Through discovery, Arbelaez learned of several facts, some of which are disputed, that indicated that Paul was within the course and scope of employment at the time of the collision. Paul testified in a deposition that his manager had asked him to go to McDonald's as his "first assignment" of the day.[2] In a summary-judgment affidavit, Paul's manager stated that he merely allowed Paul to go after Paul had volunteered. However, in a later deposition, Paul's manager admitted that he could not state for sure one way or the other and that he could have asked Paul to go. Furthermore, Paul's manager affirmatively testified in his deposition that an

---

1. The record does not contain a no-evidence motion for summary judgment.

2. Paul also testified in his deposition as follows:
   Q. Okay. And, just so I'm clear on this, Mr. Paul, you are here today telling us under oath that you were on a job assignment from Just Brakes when this collision occurred. Isn't that right, sir?
   A. Yes.
   Q. You had already punched in. You were on the clock. Right, sir?
   A. Yes.
   Q. Your gas was paid for these trips. Right?
   A. Yes.
   Q. Your manager had told you to go pick up breakfast. Right, sir?
   A. Yes.

employee routinely picked up breakfast for the crew every morning. A corporate representative for Just Brakes also testified via deposition that this practice was used not only at this particular Just Brakes location, but at other Just Brakes locations as well. Moreover, the corporate representative testified that minimizing the number of absent employees, as this method of obtaining breakfast did, benefitted Just Brakes because it was able to service more cars in a shorter period of time.

Paul stated he typically made the breakfast run for the shop because "they" reimbursed him ten dollars a week for his gas money. Just Brakes asserts that the term "they" refers to his fellow employees, but Paul specifically stated in his deposition that it was his manager who paid him.[3] Finally, on the morning in question, Paul was "on the clock" and was paid for the time he spent running this errand.

Just Brakes filed a traditional motion for summary judgment, asserting that it was not vicariously liable for Paul's negligence because he was not acting within the course and scope of his employment at the time of the accident. The district court granted Just Brakes' motion. This appeal followed.

## DISCUSSION

### Standard of review

Because the propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex.App.-Austin 1999, no pet.). A

defendant who moves for a traditional summary judgment must disprove at least one essential element of each of the plaintiff's theories of recovery or conclusively establish each element of an affirmative defense. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Nixon*, 690 S.W.2d at 549. We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965); *Domizio v. Progressive County Mut. Ins. Co.*, 54 S.W.3d 867, 871 (Tex. App.-Austin 2001, pet. denied). As Just Brakes so succinctly states in its appellate brief: "The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit, but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved, and that no genuine issue of fact remains." *See Schlager v. Clements*, 939 S.W.2d 183, 186 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *Dallas Cent. Appraisal Dist. v. G.T.E. Directories Corp.*, 905 S.W.2d 318, 320 (Tex.App.-Dallas 1995, writ denied).

Although the parties dispute some of the facts at issue, our standard of review requires us to accept the following facts as true:

- Paul was asked by his manager to obtain breakfast for the crew as Paul's "first assignment" of the day;

**3.** Just Brakes' corporate representative testified that mechanics would be reimbursed their gas money by the manager when they used their personal vehicles to run business errands such as picking up parts, driving mechanics between Just Brakes locations, or taking customers home. Just Brakes concedes that these sorts of errands would be within the course and scope of employment.

- Paul's breakfast run was a daily routine, both at this and other Just Brakes locations;
- Just Brakes benefitted by having only one employee out of the shop at a time;
- Paul's manager paid him ten dollars a week in gas money to run this errand; and
- Paul was "on the clock" and paid by Just Brakes for the time spent running this errand.

### Vicarious liability in general

■ An employer may be held liable for the tortious acts of an employee if the acts are within the course and scope of employment. *See Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998). To defeat Arbelaez's claim of vicarious liability, Just Brakes was required to establish as a matter of law either that: (1) Paul was not an employee; (2) no negligent act occurred; or (3) Paul was not acting within the course and scope of his employment at the time of the collision. *See Drooker v. Saeilo Motors,* 756 S.W.2d 394, 396 (Tex. App.-Houston [1st Dist.] 1988, writ denied) (citing *Leadon v. Kimbrough Bros. Lumber Co.,* 484 S.W.2d 567, 569 (Tex.1972)). Only the third prong—course and scope of employment—is at issue here.

■ Course and scope of employment is generally a fact issue like negligence or proximate cause. *See, e.g., GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex.1999); *Texas Workers' Comp.*

*Comm'n v. Garcia,* 893 S.W.2d 504, 515 (Tex.1995). In the context of a traditional motion for summary judgment, controlling fact issues are generally for the trier of fact, and summary judgment for a defendant is appropriate only if the defendant-movant proves that no genuine fact issue exists on an essential element of the plaintiff's claim. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 315 (Tex.1987); *Jacobs v. Theimer,* 519 S.W.2d 846, 847 (Tex.1975). The primary test for determining whether an employee is acting within the course and scope of employment is whether the employer has the right to direct and control the employee's performance at the time of the alleged negligent act. *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 542 (Tex.2003) ("the right to control remains the 'supreme test' for whether the master-servant relationship exists" and thus whether the rule of vicarious liability applies) (quoting *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins,* 926 S.W.2d 287, 290 (Tex.1996)); *American Nat'l Ins., Co. v. Denke,* 128 Tex. 229, 95 S.W.2d 370, 373 (1936); *see also* Restatement (Second) of Agency §§ 212, 219, 235 cmt. a (1958).[4]

■ To ultimately prove that an employee acted within the course and scope of employment, however, Arbelaez must *prove at trial* that the act was (1) within the general authority given to the employee; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.[5] *Leadon v. Kimbrough Bros.*

4. The Restatement (Second) of Agency states that, when considering course and scope of employment, "[i]t is the servant's state of mind that is material," and the servant's conduct can be within the course and scope of employment "if the servant is actuated to some extent by an intent to serve the master." Restatement (Second) of Agency § 235 cmt. a (1958). Where a servant was carrying out the express orders of the master, an inference is created that the servant was within the course and scope of employment; the master, however, "can rebut the inference by proving that [the servant] was [acting] solely for a purpose of his own and not to [serve the master]." *Id.* illus. 1.

5. We note that this test was developed in fact situations where it was unclear whether the

*Lumber Co.,* 484 S.W.2d 567, 569 (Tex. 1972). We can only uphold the district court's summary judgment if Just Brakes disproved as a matter of law at least one of these essential elements. *See* Tex.R. Civ. P. 166a(c); *Nixon,* 690 S.W.2d at 548. Because Paul's manager authorized Paul to obtain breakfast for the crew, Just Brakes does not dispute that Paul's actions were within the general authority given to him. We therefore address only the second two prongs.

In conducting our summary-judgment review, however, we wish to stress that our task is not to weigh the evidence to determine whether Paul was *in fact* within the course and scope of employment at the time of the collision. That question must be resolved by the trier of fact. Rather, we are to review the summary-judgment evidence, construed in favor of the non-movant, Arbelaez, and determine whether Just Brakes has carried its burden to establish as a matter of law that no genuine fact issues exist regarding the question of course and scope. Therefore, Just Brakes' burden is certainly a heavy one. It must establish as a matter of law that, construing the facts in the light most favorable to Arbelaez, it is entitled to a finding that Paul was *not* within the course and scope of employment at the time of the collision. We conclude Just Brakes has not met this burden.

### Just Brakes' motion for summary judgment

■ The sole ground on which Just Brakes moved for summary judgment was that Paul was not within the course and scope of his employment when the collision occurred. In its attempt to prove as a matter of law that Paul was not within the course and scope of employment, Just Brakes advances several arguments. First, Just Brakes states: "It is well established that an employee is not acting in the furtherance of his employer's business when he deviates from that employer's business for a personal purpose." Just Brakes then asserts that Paul's manager possibly "condoned," "knew of, or allowed" Paul to make the breakfast run, but Paul was "not ordered" to go. Just Brakes concludes that Paul's personal errand did not benefit Just Brakes, "regardless of whether [Paul's] manager knew of, or condoned, the diversion."

Just Brakes' argument fails to prove that Paul was not within the course and scope of his employment for several reasons. First, Just Brakes' argument presupposes that Paul's manager merely acquiesced in allowing Paul to make the breakfast run. The summary-judgment evidence indicates, however, that Paul's manager affirmatively *asked* Paul to make the breakfast run for the shop. Under our standard of review, we cannot—as Just Brakes would have us do—assume that Paul requested permission to make the breakfast run; we must assume Paul's manager asked Paul to perform this errand. *See American Tobacco Co.,* 951 S.W.2d at 425.

■ Next, Just Brakes argues that Paul *deviated* from his employment because the breakfast run was for *purely* personal purposes. This argument is contradicted by the summary-judgment evidence that Paul made the breakfast run as his "first as-

servant was actually serving the master. None of the seminal cases that developed this test involved a situation where the servant was carrying out, albeit negligently, the express directions of the master. *See, e.g., Southwest Dairy Products Co. v. De Frates,* 125 S.W.2d 282 (Tex.1939) (driver detoured from mission to obtain supper); *International & G.N.R. Co. v. Anderson,* 82 Tex. 516, 17 S.W. 1039 (1891) (railroad brakeman had no implied authority to eject passengers).

signment" of the day after he was requested to do so by his manager. *See id.* "If the purpose of serving the master's business actuates the servant to any appreciable extent his acts are within the scope of employment." *Howard v. American Paper Stock Co.*, 523 S.W.2d 744, 747 (Tex. Civ.App.-Fort Worth 1975), *reformed and aff'd*, 528 S.W.2d 576 (Tex.1975); *accord Best Steel Buildings, Inc. v. Hardin*, 553 S.W.2d 122, 128 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.); *Dictaphone Corp. v. Torrealba*, 520 S.W.2d 869, 872 (Tex.Civ.App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.). Even if Paul was personally benefitted to some degree by his breakfast run, his actions could still be within the course and scope of his employment. *See Gilgon, Inc. v. Hart*, 893 S.W.2d 562, 568 (Tex.App.-Corpus Christi 1994, writ denied) (employee's actions may still be within course and scope of employment even if private matters are mixed with business errand); *Torrealba*, 520 S.W.2d at 872 ("Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person.") (citing Restatement (Second) of Agency § 236 (1958)); *Josey–Miller Co. v. Sheppard*, 357 S.W.2d 488, 490 (Tex.Civ.App.-Beaumont 1962, no writ) (employee still within course and scope even when "there is a mingling of the master's business with the servant's business"). We therefore hold that Just Brakes failed to prove that Paul deviated from his employment by complying with his manager's request to make the breakfast run.

Finally, Just Brakes argues that Paul's "personal errand" was not in furtherance of Just Brakes' business. As explained above, the summary-judgment evidence does not prove that Paul's errand was for purely personal purposes. Moreover, summary-judgment evidence exists to indicate that Just Brakes was indeed benefitted by Paul's breakfast run. Just Brakes' corporate representative testified in a deposition[6] that (1) Just Brakes can complete more work in a shorter time period with more mechanics present; (2) the practice of using one employee to obtain breakfast for the entire shop was common at various Just Brakes locations; (3) to get a day's work done, a store requires a minimal number of mechanics; (4) it is important to have a manager present at all times; and (5) a reasonable manager would try to reduce the number of mechanics missing at any given time. Because this routine practice benefitted Just Brakes, albeit indirectly, Just Brakes has failed to prove that Paul's conduct was a purely personal errand that was not in furtherance of Just Brakes' business.

We also address the numerous cases Just Brakes cites in support of its contentions laid out above.[7] Each of these cases

---

**6.** In response to Arbelaez's use of this evidence, Just Brakes states that it "disputes the 'inference[s]' [Arbelaez] attempts to draw" from Just Brakes' corporate representative's testimony. This, however, ignores that every reasonable inference must be indulged in favor of Arbelaez and any doubts resolved in her favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985).

**7.** We have been unable to find a single case in Texas jurisprudence that supports the proposition that an employee is *not* within the course and scope of employment when the employee carries out the express instructions of his employer in an activity that benefitted, even indirectly, the employer's business. The closest case is *Brown v. American Racing Equipment, Inc.*, 933 S.W.2d 734, 735 (Tex. App.-San Antonio 1996, no writ), where an employee on his lunch break performed a "favor" for his manager. In *Brown*, however, the employee was exceeding the scope of his manager's authorization when the accident occurred. *Id.* at 736. The court held that the employee was not within the course and scope of his employment because there was no evidence that the employee was authorized to act as he did. *Id.*

is easily distinguishable. *See Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d 202 (Tex.App.-Amarillo 1996, no writ) (employee commuting from lunch break); *Brown v. American Racing Equip., Inc.*, 933 S.W.2d 734 (Tex.App.-San Antonio 1996, no writ) (employee exceeded scope of manager's authorization when performing "favor" for manager while on lunch break); *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632 (Tex.App.-San Antonio 1993, no writ) (employee commuting to work site following dinner); *Andrews v. Houston Lighting & Power*, 820 S.W.2d 411 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (employee going to lunch). None of these cases addresses a situation where an employee complied with an employer's request to run an errand that benefitted, even indirectly, the employer's business.

Just Brakes also cites *Mitchell v. Ellis*, 374 S.W.2d 333 (Tex.App.-Fort Worth 1963, writ ref'd), for the proposition that no benefit flows to the employer by allowing an employee to engage in a purely personal matter.[8] As explained above, Paul's breakfast run was not a purely personal matter, as was at issue in *Mitchell. See id.* Paul was complying with his manager's request to perform an errand that benefitted Just Brakes.

Finally, Just Brakes cites two cases for the proposition that an employer's reimbursement of gas money to an employee does not create a fact issue on course and scope of employment. These cases, too, are easily distinguishable in that they involve employees commuting to or from work, where the reimbursement of gas money was the *only* factor supporting a contention that the employee was within the course and scope of employment. *See Wilson v. H.E. Butt Grocery Co.*, 758 S.W.2d 904, 907 (Tex.App.-Corpus Christi 1988, no writ) (employee driving home following work was compensated for extra trip to office); *London v. Texas Power & Light Co.*, 620 S.W.2d 718, 720 (Tex.App.-Dallas 1981, no writ) (employee driving to work at temporary job site was compensated for extra distance traveled to temporary job site). Here, the summary-judgment evidence indicates not only that Paul was reimbursed his gas money on a weekly basis, but also that Paul's manager asked Paul to perform this errand on a routine basis, and that the errand benefitted Just Brakes.

Having reviewed Just Brakes' motion for summary judgment, we hold that Just Brakes failed to prove as a matter of law that Paul was not acting within the course and scope of his employment.[9]

## CONCLUSION

Under our standard of review, every reasonable inference must be indulged in favor of Arbelaez and all doubts resolved in her favor. Applying this summary-judgment standard, genuine fact issues exist as to whether Paul's actions were within the course and scope of his employment. Just Brakes has therefore failed to dis-

---

**8.** In *Mitchell v. Ellis*, the employee deviated from his delivery duties to purchase cigarettes; after exiting his vehicle, he crossed a street negligently, causing an accident. 374 S.W.2d 333, 335 (Tex.App.-Fort Worth 1963, writ ref'd).

**9.** Just Brakes also argues that Paul's actions did not constitute a "special mission" on behalf of Just Brakes. *See, e.g., Upton v. Gensco, Inc.*, 962 S.W.2d 620, 622 (Tex.App.-Fort

Worth 1997, pet. denied); *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 636 (Tex.App.-San Antonio 1993, no writ). Because the special-mission doctrine is only applied in commuting cases and Paul was not commuting, but was already at work when his manager instructed him to make the breakfast run, we conclude that it is unnecessary to engage in a special-mission analysis. *See, e.g., Upton*, 962 S.W.2d at 622; *Salaiz*, 866 S.W.2d at 636.

prove as a matter of law Arbelaez's claim of vicarious liability. The ultimate question of whether Just Brakes is vicariously liable for Paul's acts must be decided by a trier of fact. We therefore reverse the summary judgment of the district court and remand for further proceedings.

Dissenting Opinion by Justice B.A. SMITH.

BEA ANN SMITH, Justice, dissenting.

Because Paul was picking up food for himself and his co-workers, I respectfully disagree with the majority that he could have been acting in the course and scope of his employment as a brake technician. The court-made doctrine of vicarious liability has developed as a policy choice to allocate to employers, as a required cost of business, the losses caused by employees that are sure to occur in the conduct of the employer's enterprise. Keeton, et al., *Prosser and Keeton on the Law of Torts* § 69, at 499–501 (5th ed. 1984) (Keeton); *see also Dutcher v. Owens*, 647 S.W.2d 948, 950–51 (Tex.1983). Such risks are placed upon the employer

> because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.

Keeton at 499–501, *quoted in St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 540–41 (Tex.2002). Thus, "the scope and extent of vicarious liability under the common law is clearly a policy determination—pure although not simple." *Wolff,* 94 S.W.3d at 541. I conclude that the public policy

choice here is both pure and simple: employers should not be vicariously liable for the torts of their employees committed while engaged in personal errands, even while "on the clock."

Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an employee acting within the scope of his employment, although the employer has not personally committed a wrong. *Id.* at 541–42. "The most frequently proffered justification for imposing such liability is that the principal or employer has the *right to control the means and methods* of the agent or employee's work." *Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex. 1998) (emphasis added), *quoted in Wolff,* 94 S.W.3d at 542; *see also American Nat'l Ins. Co. v. Denke,* 128 Tex. 229, 95 S.W.2d 370, 373 (1936). This right to control distinguishes independent contractors, who have sole control over the means and methods of the work to be accomplished, from employees. *Sampson,* 969 S.W.2d at 947. Indeed, as the majority notes, the right to control is the "supreme test" for whether the master-servant relationship exists. *Wolff,* 94 S.W.3d at 542 (citing *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins,* 926 S.W.2d 287, 290 (Tex.1996)). The test boils down to this question: Does the person sought to be held liable have such a degree of express or implied control over the actor that it is *just* to impose on him the consequences of the actor's wrongful conduct? *Wolff,* 94 S.W.3d at 542. I cannot answer this question in the affirmative under these facts.

There is no evidence that Just Brakes or Paul's manager had the right to control the means and methods of Paul's breakfast run. Paul's manager testified that he did not direct Paul to take any particular route to get to the McDonald's and that he him-

self would have taken a different route. Nor can I imagine any circumstances under which Paul's manager would have the *right* to control *how* Paul got to and from McDonald's. Because Paul was merely picking up a *meal* for himself and co-employees, I cannot imagine what possible right his manager had to direct how Paul went about accomplishing this "assignment," if it could fairly be characterized as an assignment.

Furthermore, these facts do not, as a matter of law, create a fact issue on all three prongs of the supreme court's test asking whether the act was: (1) within the general authority given to the employee; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed. *See Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex. 1972); *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex.1971); *Kobza v. Kutac*, 109 S.W.3d 89, 93 (Tex. App.-Austin 2003, pet. denied); *see also Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 576 (Tex.2002). Summary judgment in favor of Just Brakes was proper because the evidence creates no fact issue on the second two prongs.

First, Arbelaez urges that Paul's trip to McDonald's was in furtherance of Just Brakes' business because some evidence indicates that Paul's manager asked him to fetch breakfast. The fact issue as to whether Paul volunteered or was asked to go to McDonald's is irrelevant because the question we must resolve is whether Paul, an automobile brake technician, could have been acting in furtherance of Just Brakes' business while traveling to McDonald's, even if ordered to go by his manager. *See Brown*, 933 S.W.2d at 736 (despite manager's request, running personal errand for manager was not in course and scope because it did not further employer's business).

The connection between the business of repairing automobiles and picking up a meal for employees is tenuous at best. Meals are by nature personal, not business affairs. *See J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 639 (Tex.App.-San Antonio 1993, no writ) (despite being on 24–hour call and driving employer's vehicle, employee was not in course and scope when returning to work site from lunch); *Andrews v. Houston Lighting & Power*, 820 S.W.2d 411, 414 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (using company vehicle to get lunch is not in furtherance of employer's business). While it may be in any business's interest to have employees fed and functioning at full efficiency, not every activity promoting attendance or efficiency can subject an employer to liability as being "in furtherance" of its business. Perhaps an employee will work more efficiently if he is permitted to leave his office to purchase a coffee in the waning afternoon hours, or perhaps an employee will provide better customer service after she has picked up a medical prescription from the corner drugstore on her morning break. A manager may even "order" an employee to go to the doctor because his consistent coughing is slowing his work pace and putting other employees at risk of contagion. But an incidental benefit to an employer from an employee's personal errand cannot open the employer to vicarious liability for all such activities. Even if the employee runs an errand for the benefit of a superior or at such superior's behest, such activity cannot subject an employer to vicarious liability if it is not undertaken in furtherance of the employer's business. *See Brown*, 933 S.W.2d at 737. Rarely will obtaining breakfast further an employer's business.

Here, Arbelaez urges that using one employee to pick up breakfast for the others furthered the business of Just Brakes by minimizing the number of absent employees, "thus providing enhanced customer service and enabling employees to work more efficiently." This argument relies on the deposition testimony of David Lilly, a corporate representative for Just Brakes, who stated that (1) "common sense" would dictate that a store manager not allow all employees to take their fifteen-minute breaks at the same time; (2) it is important to have a manager present at all times; (3) a reasonable manager would try to reduce the number of mechanics missing at any given time; and (4) to get a day's work done, a store requires a minimal number of mechanics. Taking all of this evidence and making all *reasonable* inferences in favor of Arbelaez, such incidental benefit to Just Brakes cannot subject it to vicarious liability for its employee's negligence while making a breakfast run.

There are countless personal errands or affairs from which an employer's business productivity or efficiency will arguably benefit. However, the test does not ask whether the act of the employee benefitted the employer; rather, it asks whether the act was *in furtherance of the employer's business*. Just Brakes' business is the servicing of automobiles. Under these facts, picking up breakfast for the employees, as opposed to picking up automobile parts for the repair of cars, does not further Just Brakes' business.

Arbelaez retorts that evidence indicating that such breakfast runs were "routine" supports her allegation that Paul was acting in the course and scope of employment. Paul testified that breakfast runs occurred every day, and the depositions of Lilly and Paul's manager indicate that other Just Brakes locations have the same custom of allowing one mechanic to pick up breakfast or lunch for the crew. Arbelaez argues that it is the regular, routine nature of the practice that makes Just Brakes liable, as its acquiescence or even promotion of the practice indicates its implied approval of the breakfast run. *See Kennedy v. American Nat'l Ins. Co.*, 130 Tex. 155, 107 S.W.2d 364, 366 (1937), *quoted in Soto v. Seven Seventeen HBE Corp.*, 52 S.W.3d 201, 205–06 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Even so, a "routine" occurrence still must be in *furtherance* of the employer's business. *See Kennedy*, 107 S.W.2d at 366.

In addition to furthering the employer's business, the third prong requires the act to accomplish the object for which the employee was employed. *Leadon*, 484 S.W.2d at 569; *Van Cleave*, 468 S.W.2d at 357. Paul was employed as a brake technician. The object for which he was employed was the servicing of automobiles. *See Leadon*, 484 S.W.2d at 569 (object for which employee employed was to assist lumberjack by, among other duties, keeping lookout for hanging or falling limbs). There is no evidence that Paul was employed for the object of feeding his co-workers, making sure that the office was well-staffed, or even obliging the personal requests of his manager. Therefore, in picking up breakfast for his manager and co-workers, Paul was not accomplishing the object for which he was hired.

Even making the reasonable inference in favor of Arbelaez that Paul was employed for the general object of "benefitting" Just Brakes' business, again I cannot agree that such "benefit" extends as far as employees being fed. Nor can such business purpose extend so far as one employee running personal errands for the entire office just so other employees can put in more time or not be absent all at once. On the other hand, I can imagine a valid

business benefit of, say, a law-firm manager's asking one legal assistant to go file several of the attorneys' motions at the courthouse to save the other assistants time and so that they are present to handle other matters that may arise. The difference is that the "errand" the assistant is asked to do is a "business" errand.

Arbelaez notes evidence indicating that Paul would usually be "reimbursed" for his gas money expended in picking up breakfast. It is not clear from the record whether Just Brakes reimbursed him or whether the other employees gave him gas money. Yet, reimbursement of an employee for mileage is not sufficient to create a fact question with regard to whether the employee was in the course and scope of his employment. *See Wilson v. H.E. Butt Grocery Co.*, 758 S.W.2d 904, 907 (Tex. App.-Corpus Christi 1988, no writ); *London v. Texas Power & Light Co.*, 620 S.W.2d 718, 720 (Tex.App.-Dallas 1981, no writ). Even making the inference in favor of Arbelaez that Just Brakes reimbursed Paul's gas money for the breakfast runs, Arbelaez still had the burden to create a fact issue on whether Paul was engaged in the course and scope of his employment by furthering the business and accomplishing the business purpose for which he was hired. Many employers graciously allow their employees to run personal errands occasionally while they are "on the clock." That is not sufficient to create a fact issue as to whether that personal errand was in the course and scope of employment.

Because picking up food for himself and his co-workers was not in furtherance of Just Brakes' business and did not accomplish any object for which he was employed, as a matter of law Paul was not acting in the course and scope of his employment with Just Brakes when he was involved in the automobile collision with Arbelaez. I would affirm the district court's summary judgment in favor of Just Brakes. Accordingly, I respectfully dissent.