# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00312-CV

**Texas Property and Casualty Insurance Guaranty Association for
Petrosurance Casualty Company, Impaired Insurer, Appellant**

**v.**

**Randy Brooks, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
## NO. D-1-GN-03-001030, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

Appellee Randy Brooks was injured in an automobile accident while driving home from his job as a driller on an oil rig. After the Texas Department of Insurance Workers' Compensation Division determined that Brooks's injury was not compensable because he was not "in the course and scope of employment" at the time of his injury, Brooks brought suit against appellant Texas Property and Casualty Insurance Guaranty Association ("TPCIGA") for workers' compensation benefits in the district court. *See* Tex. Lab. Code Ann. § 406.031 (West 2006). After considering cross motions for summary judgment, the district court found that Brooks was in the course and scope of employment at the time of his injury and granted summary judgment in his favor.

On appeal, TPCIGA contends that (1) the summary judgment granted in favor of Brooks is void and must be set aside due to Brooks's failure to file a proposed judgment with the

Division pursuant to section 410.258 of the labor code before the trial court entered its summary judgment; and (2) the trial court erred by granting summary judgment in favor of Brooks because Brooks was not in the course and scope of employment at the time of his injury as a matter of law or, alternatively, that a material question of fact exists with respect to that issue.

We conclude that the trial court's summary judgment is not void. However, we find that a genuine issue of material fact exists with respect to whether Brooks was in the course and scope of employment at the time of his injury. Accordingly, we reverse the summary judgment and remand this cause to the trial court.

**Factual and Procedural Background**

Brooks worked for Patterson Drilling Company as a driller on various oil rigs. From time to time, the location of Brooks's job site would change depending on production levels of various rigs. At the time of the accident, Brooks worked the night shift on "Rig 17" near Garden City with three other Patterson employees serving as his crew. Brooks and his crew members lived in Odessa, and Brooks transported his crew between Odessa and Rig 17 in his personal truck.[1]

Brooks and his crew were paid an hourly wage for the time they spent working at the rig site. They were not paid an hourly wage for the time spent traveling to and from the rig site. In addition to the hourly wage, Patterson paid Brooks a fixed daily amount of $50. His crew members did not receive this additional pay.

---

[1] Brooks testified at the contested case hearing that the distance from Odessa to Rig 17 near Garden City was 52 miles.

2

On February 21, 2001, Brooks was injured in an automobile accident while returning to Odessa from Rig 17. He was transporting his crew members at the time of the accident. Petrosurance Casualty Company, the workers' compensation carrier for Patterson, denied Brooks's claim for compensation on the basis that he was not "in the course and scope of employment" at the time of the accident as required by the Texas Workers' Compensation Act. *See* Tex. Lab. Code Ann. § 406.031. Brooks then submitted the dispute to the Texas Department of Insurance Workers' Compensation Division. The Division held a contested case hearing and determined that Brooks did not have a compensable claim. An appeals panel of the Division affirmed.

Brooks sought judicial review of the agency decision. While the district court action was pending, Petrosurance was declared an impaired insurer and TPCIGA became the real party in interest. *See* Tex. Ins. Code Ann. § 462.004(5) (West 2008) (defining "impaired insurer"). TPCIGA and Brooks filed cross motions for summary judgment. The central issue presented by their motions was whether the $50 per diem received by Brooks was compensation for transporting his crew to and from work such that his injury occurred in the course and scope of employment. The trial court found that "no genuine issues of material fact exist as to whether [Brooks] was within the course and scope of his employment" and granted summary judgment in favor of Brooks.

**Section 410.258**

In its first issue, TPCIGA contends that the summary judgment granted in favor of Brooks is void and must be set aside due to Brooks's failure to file a proposed judgment with the Division before the trial court entered its summary judgment. Section 410.258 of the labor code,

3

entitled "Notification of Division of Proposed Judgments and Settlements; Right to Intervene," provides in relevant part:

> (a)    The party who initiated a proceeding under this subchapter or Subchapter G must file any proposed judgment or settlement made by the parties to the proceeding, including a proposed default judgment, with the division not later than the 30th day before the date on which the court is scheduled to enter the judgment or approve the settlement. The proposed judgment or settlement must be mailed to the division by certified mail, return receipt requested.
>
> . . . .
>
> (f)    A judgment entered or settlement approved without complying with the requirements of this section is void.

Tex. Lab. Code Ann. § 410.258 (West 2006).

The dispute on this point concerns the type of judgment that must be submitted to the Division for approval under section 410.258. TPCIGA contends that the statute requires that all judgments must be submitted to the Division to be valid. Brooks argues that the statute does not apply to judgments prepared by the trial court. These competing views arise from different interpretations of what the phrase "made by the parties" in subsection (a) modifies—"settlement" or "proposed judgment or settlement." *See id.* § 410.258(a). TPCIGA argues that "made by the parties" modifies only the term "settlement." Under this theory, the party who initiated the proceeding must file with the Division any settlement "made by the parties" and any proposed judgment whether "made by the parties" or not. Brooks argues that "made by the parties" modifies both "settlement" and "proposed judgment." Under his theory, the party who initiated the

4

proceeding must file with the Division any proposed judgment "made by the parties" and any settlement "made by the parties." This reading would require the submission only of judgments "made" or proposed to the court by the parties, such as proposed judgments that have been agreed to by the parties. It would exclude from the submission requirement all other judgments such as those entered by the court without the agreement of the parties.

Both parties contend that subsection (f) supports their view. Subsection (f) provides that "a judgment" entered without complying with the requirements of the statute is void. *Id.* § 410.258(f). TPCIGA contends that because "a judgment" does not distinguish between proposed judgments "made by the parties" and judgments entered by the trial court that have not been submitted by the parties by agreement, the legislature intended for the statute to apply to any judgments regardless of whether they are the result of agreement or the adversarial process. Brooks responds that, when reading the statute as a whole, the reference to "a judgment" in subsection (f) is limited by subsection (a) of the statute. He contends that the general language of subsection (f) cannot apply to a broader range of judgments than those contemplated by subsection (a), which—according to Brooks—applies only to proposed judgments "made by the parties."

Our primary objective in statutory construction is to give effect to the legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In deriving the legislature's intent, we rely on the plain meaning of the statutory text, unless a different meaning is supplied by legislative definition or is apparent from context, or such construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (citing *Texas Dep't of Transp. v. City of Sunset*

5

*Valley*, 146 S.W.3d 637, 642 (Tex. 2004), *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n of City of Lubbock*, 616 S.W.2d 187, 189 (Tex. 1981); *University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004); *see Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998) (we consider statutory language in context, not isolation). Our analysis of the statutory text is also informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005), as well as consideration of the "object sought to be attained" by the statute and the "consequences of a particular construction," *Id.* § 311.023(1), (5) (West 2005).

The practical implications of both parties' interpretations persuade us that the legislature did not intend that the statute apply to judgments entered by the trial court that were not submitted or proposed to the court by agreement of the parties or the result of a default by the defendant. The statute was intended to prevent the parties from colluding to overturn appeals panel decisions.[2] It accomplishes this purpose by requiring submission of judgments "made" by the parties—i.e. judgments proposed to the court by agreement of the parties rather than judgments entered as a result of adversarial proceedings. If, however, the statute were to apply to any judgment, a strict reading of the statute would require a trial court to figure out a way to get the party who initiated the action to submit the judgment the court is preparing to enter to the Division

---

[2] We observe that the bill analysis for section 410.258 of the labor code provides that the statute "prevents the use of settlement agreements, and judgments based on default or on an agreement of the parties, to overturn Appeals Panel decisions." *See* House Comm. on Bus. & Indus., Bill Analysis, Tex. H.B. 3137, 75th Leg., R.S. (1997).

for approval thirty days in advance of entry in every case.[3] This would be true regardless of whether the judgment is the result of noncollusive, adversarial proceedings or the result of an agreement between the parties. If this were the procedure, a party who initiated an action for judicial review of an agency decision could avoid or delay entry of an adverse judgment by refusing, delaying, or otherwise failing to submit the judgment to the Division. In addition, judgments entered after a failure to appear by the plaintiff or after a failure to prosecute or on the court's motion on jurisdictional grounds would have to be submitted to the Division before entry even if "the party who initiated the proceeding" is not available or is not interested in making the submission. Section 410.258 does not address these types of situations, where the entry of judgment may be appropriate but the judgment has not been proposed or "made" by the parties. Nor does the statute provide a procedure for addressing such situations or specify who is responsible for making the submission to the Division if the "party who initiated the proceeding" is not available or no longer actively involved in the litigation.

We are of the view that the statute does not address such situations because it was not designed to address them. It was designed to address judgments prepared and proposed by the parties—i.e. "made by the parties"—to avoid collusion between them without the Division's knowledge. Such collusion could distort the litigation process. If the parties are not proposing a judgment or settlement by agreement, the litigation process is running its course without threat of collusion or distortion. The statute's placing the burden of submitting a proposed judgment on the

---

[3] The statute requires that the party who *initiated* the action—not the court or the defendant—timely and correctly file the proposed judgment with the Division. Tex. Lab. Code Ann. § 410.258(a) (West 2006).

party who initiated the proceeding makes sense in the context of an agreed proposed judgment that the party has an interest in seeing entered. This burden does not make sense in the context of a judgment entered after fully adversarial proceedings or proceedings in which the party who initiated the proceeding has failed to appear or failed to prosecute.

We conclude that section 410.258 does not require the Division to receive advance notice of every judgment in a proceeding initiated under subchapter F or G of the labor code. Instead, we are of the opinion that the statute requires the Division to receive notice of proposed judgments "made by the parties"—i.e. without judicial oversight or without fully adversarial proceedings—and settlement agreements made by the parties. This interpretation ensures that the trial court does not sign off on a proposed judgment made or agreed to by the parties before the Division has been notified and given an opportunity to intervene. Additionally, this interpretation does not place impractical procedural burdens on the trial court or permit a party who initiated the proceeding to avoid or delay entry of an adverse judgment by refusing to submit the judgment to the Division. This interpretation also gives meaning to the phrase "made by the parties" that is consistent with the purpose of the statute.

We recognize that our holding in this case is inconsistent with the El Paso Court of Appeals' opinion in *Insurance Co. of the State of Pennsylvania v. Martinez*, 18 S.W.3d 844 (Tex. App.—El Paso 2000, no pet.). In *Martinez*, the court held that a summary judgment prepared by the trial court was void because the Division did not receive notification pursuant to section 410.258. *Id.* at 848. It specifically stated that "[b]efore the trial court entered summary judgment, no notification was filed with the commission as mandated by

8

Section 410.258. The trial court was, therefore, without jurisdiction to render judgment, and it is void." *Id.* For the reasons discussed above, we respectfully disagree with the interpretation of section 410.258 in *Martinez*.

Our holding does not, however, conflict with the Houston court of appeals' opinion in *Metropolitan Transit Authority v. Jackson*, 212 S.W.3d 797 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). That case was tried to a jury and a verdict was rendered. The parties engaged in post-verdict negotiations before a judgment was entered. As a result of those negotiations, the parties agreed to a judgment awarding Jackson supplemental benefits and attorneys' fees. *Id.* at 799. The trial court signed a judgment reflecting the parties' agreement. *Id.* On appeal, it was undisputed that Jackson did not submit the proposed judgment to the Division pursuant to section 410.258. *Id.* at 800. Accordingly, the Houston court of appeals held that the trial court's judgment was void due to noncompliance with the statute. *Id.* at 801. This was a situation where the parties agreed upon a result and submitted a proposed judgment to the trial court for approval. It was a judgment made and proposed by the parties. The fact that it was proposed post-verdict does not affect the analysis. We agree that, under the circumstances presented in the *Jackson* case, noncompliance with section 410.258 renders the judgment void.

In this case, however, there is no evidence in the record that the trial court based its summary judgment on any kind of agreement or resolution of the case made or proposed by the parties. There was no proposed judgment "made by the parties" that Brooks could have filed with the Division. The trial court prepared and entered a judgment based on its evaluation of the merits of the case and the cross motions for summary judgment filed by the parties. The judgment was

9

entered after fully adversarial proceedings and without threat of collusion between the parties that could potentially distort the result. Such a judgment is not "made by the parties" as contemplated by section 410.258. We hold that the summary judgment granted in favor of Brooks is not void.

**Summary Judgment**

In its second issue, TPCIGA contends that the trial court erred by granting summary judgment in favor of Brooks because Brooks was not acting in the course and scope of employment at the time of his injury as a matter of law or, alternatively, that a genuine issue of material fact exists with respect to that issue.

We review the summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). The standards for reviewing a summary judgment are well established: (1) the movant must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether a disputed issue of material fact exists that would preclude summary judgment, we take all evidence favorable to the non-movant as true; and (3) we indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When, as here, both parties file motions for summary judgment and the court denies one and grants the other, we must review the summary-judgment evidence presented by both sides, decide all questions presented, and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

Under the Workers' Compensation Act, an insurance carrier is liable for compensation for an employee's injury if the injury arises out of and in the course and scope of

10

employment. Tex. Lab. Code Ann. § 406.031. The primary test for determining whether an employee is acting within the course and scope of employment is whether the employer has the right to direct and control the employee's performance at the time of the act. *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet.) (citing *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2003)). Generally, an employee is not in the course and scope of his employment while driving his own vehicle to and from his place of work. *Soto v. Seven Seventeen HBE Corp.*, 52 S.W.3d 201, 205 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Upton v. Gensco, Inc.*, 962 S.W.2d 620, 621 (Tex. App.—Fort Worth 1997, pet. denied). However, the term "course and scope of employment" may include transportation to and from the place of employment when the transportation is furnished as a part of the contract of employment or is paid for by the employer. Tex. Lab. Code Ann. § 401.011(12) (West Supp. 2008).

In this case, the parties dispute whether the additional $50 Brooks received on a daily basis was payment for transportation that would place his drive to and from oil rig sites within the "course and scope of employment." Some of the evidence in the record suggests that Patterson paid Brooks $50 per day to transport his crew to and from work. Brooks testified at the contested case hearing that the $50 daily payment was "regularly referred to as driving pay on the rig" and "[t]hat 50 dollars a day is so you'll show up with a full crew." Additionally, the "Drilling Rig Safety Orientation" manual provided by Patterson to Brooks and admitted into evidence stated: "[t]he [d]riller on each tour is directly responsible to insure that his personnel arrive at the worksite prepared to work." The record also contains the affidavit of Ron Simonds, a tool pusher at Patterson who hired Brooks to work on a rig in Fort Stockton, which stated:

11

Patterson referred to the additional $50.00 payment as "per diem" pay. However, at the time, more than five years after Mr. Brooks' hire, I do not specifically recall if I referred to this additional amount as "per diem" when I hired Mr. Brooks. I may have referred to it as "driving pay" because that was a term frequently used by workers in the field.

On the other hand, the record also contains evidence suggesting that Patterson did not pay Brooks $50 per day to transport his crew to and from the rig site. When asked at the contested case hearing whether "anybody at Patterson ever instruct[ed] you or t[old] you that you had to carry crew," Brooks responded "no." Additionally, Mark Cullifer, vice president of operations at Patterson, testified that Patterson paid every driller $50 regardless of whether that driller drove himself to the rig, transported members of his crew to the rig, or even walked to the rig. He explained the reason for the $50 daily payment as follows: "[w]e were losing drillers to our competition, and Mr. Patterson thought [the drillers] were making as much as they should make hourly. And to be honest with you we—when we raise wages it costs us a lot of money in other ways, so expense was the way that they raised their wages." Lastly, Simonds stated in his affidavit, "I did not tell Mr. Brooks that the additional $50 per day was for transporting Patterson's employees, or his crew, to the rig. I also did not tell Mr. Brooks that the payment was to reimburse him for the expense of operating his vehicle."

On this record, we conclude that a fact issue exists with respect to whether the $50 daily payment provided to Brooks was compensation for transporting his crew to and from work and, therefore, transportation furnished or paid for by the employer, or some other type of additional

12

compensation. We reverse the summary judgment and remand this cause for further proceedings consistent with this opinion.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop
  Concurring and Dissenting Opinion by Justice Patterson

Reversed and Remanded

Filed: August 8, 2008