# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00736-CV

---

**Sarah Cook, Appellant**

**v.**

**Texas Highway Walls, LLC, Appellee**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-006133, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Sarah Cook sued Blake Cervenka and his company, Texas Highway Walls (THW), for personal injuries she sustained when a vehicle driven by Cervenka hit her vehicle. She asserted negligence and gross negligence by both defendants and alleged further that THW was vicariously liable for Cervenka's negligence. The district court granted THW's motion for summary judgment and severed those claims into this action. Because we find genuine issues of material fact concerning THW's vicarious liability, we will reverse the judgment on that theory, affirm the judgment in all other respects, and remand the vicarious liability issue to the trial court for further proceedings.

## BACKGROUND

Cervenka is part owner and vice president of THW, a company that builds retaining walls for highways. He testified in his deposition that he handles "all the project

management, engineering, estimating, job procurement" and is partially responsible for scheduling for THW. His usual routine is to spend the first half of the day in the office while his afternoons are a "mixed bag;" he might run personal errands, pick up his children from school, and go "occasionally to a job site or a meeting."

On April 16, 2018, Cervenka left the THW office and drove north on Capital of Texas Highway a little before 1:00 p.m. Cervenka testified in his deposition that he did not recall where he was going but was "pretty confident" he was not headed to a job site because THW did not "have any job sites on north 183" and its suppliers are not located in that area. Cervenka failed to notice that Cook was slowing for a red light and collided with the rear of her vehicle at 1:05 p.m. A police report stated that Cervenka said he did not see Cook slowing because he "was lo[o]king for something in his passenger seat and did not r[e]alize the vehicles in front of him [were] stopping." At his deposition, Cervenka stated instead that he recalled telling the officer that he "reached over to stop everything from coming off of my seat when I realized everybody was coming to a complete stop and was braking and holding everything in my seat at the same time."

Cervenka was driving a Ford F250 pickup truck with a THW decal on it. Cervenka testified that the truck was his personal vehicle and THW sent him a check every month to cover the monthly lease payments. THW also provided him with a fuel card to cover the cost of gas. Cervenka testified that he paid off the lease and sold the truck approximately a week before the deposition.

Cook sued Cervenka and THW. She alleged that Cervenka was negligent in operating the truck, that his actions amounted to gross negligence, and that THW was vicariously liable for his actions as its employee or agent. She further alleged that THW was negligent and

grossly negligent for failing to adopt policies and train its employees on the dangers of distracted driving. THW filed a no-evidence and traditional motion for summary judgment and to sever. The district court granted the motion without stating its reasons and severed the claims against THW from those against Cervenka.

## LEGAL STANDARDS

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). A party moving for traditional summary judgment must demonstrate that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). By contrast, a party may obtain a no-evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *Id.* R. 166a(i). To defeat a no-evidence motion, the nonmovant has the burden to "present evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021).

A genuine issue of material fact exists if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Circumstantial evidence can defeat a no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere

surmise or suspicion" that the fact exists. *Id.* (citing *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

## ANALYSIS

The trial court granted THW summary judgment that THW was not liable vicariously for Cervenka's acts or directly for its own failure to train Cervenka to avoid this accident. Cook contends that the record does not support the summary judgments on her claims against THW for vicarious liability for Cervenka's negligence, negligence, and gross negligence, and that the trial court erred by severing her claims against THW from her claims against Cervenka.

### Vicarious liability

THW contended that it cannot be held liable for Cervenka's actions because (1) Cervenka is an officer and owner, not an employee, of THW; (2) THW did not exercise control over Cervenka's use of his personal automobile; (3) Cervenka was not acting in furtherance of THW's business at the time of the accident; and (4) Cervenka's use of a THW gas card and acceptance of reimbursement for the vehicle loan does not create vicarious liability.

Cervenka's status as an employee is not dispositive because a company can be held liable through respondeat superior or vicarious liability for actions of its *agent* taken while in furtherance of the company's business. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007); *cf.* Tex. Civ. Prac. & Rem. Code § 101.001 (for vicarious liability claims against governmental units, defining "employee" as "officer or agent" in paid service of employer). Indeed, Cook alleged in her amended petition that Cervenka was "an agent for the company" and argued in her response to the summary-judgment motion that "there is a

4

scintilla of evidence that Defendant Blake Cervenka was working as an agent for THW at the time of the accident." To be an agent, a person must (1) act for and on behalf of another person and (2) be subject to that person's control. *J.P. Morgan Chase Bank, N.A. v. Texas Cont. Carpet, Inc.*, 302 S.W.3d 515, 525 (Tex. App.—Austin 2009, no pet.). The party claiming agency must prove that the principal has both the right to assign the agent's task and the right to control the means and details by which the agent will accomplish the task. *Id.* Cervenka was a vice president and part owner of THW who did project management, engineering, estimating, and job procurement for THW. This is some evidence that Cervenka was in a position at THW through which THW could be held liable for his actions taken while acting in furtherance of the company's business.

There is some evidence that Cervenka was acting in furtherance of the company's business and as its agent at the time of the accident. Cervenka agreed at his deposition that he did not recall where or for what purpose he was driving on the afternoon of the wreck. He testified that, after a typical morning in the office working for THW, his afternoons could include business activities such as going to a job site or a meeting in addition to doing personal activities. This mix of purpose is consistent with his payment for fuel for the truck; he paid for the fuel sometimes with his company fuel credit card and sometimes with his personal card but did not track mileage accrued in those categories.

On the day of the accident, Cervenka left work and drove north on Loop 360 past the exit for his home[1] and was preparing to turn north on United States Highway 183. In

---

[1] The undisputed fact that Cervenka had driven beyond the exit to his house renders the coming-and-going rule and special-mission doctrines inapplicable for purposes of this summary-judgment review. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 136 (Tex. 2018) (under coming-and-going rule, employer is generally not liable for acts of its employees

5

response to interrogatories, Cervenka said he could have been going to a store for personal reasons or to lunch, and he testified that he did not think he was meeting someone for lunch because he did not call anyone after the wreck about delaying their lunch. He testified that he was "pretty confident" that he was not headed to a jobsite because THW did not have job sites north of 360 on 183. Evidence showed that THW had two job sites north of Austin—one in Georgetown and one on Farm to Market Road 1431; the 1431 jobsite was inspected two days later by a state agency, though THW executive superintendent Dion Hecker testified that no THW crew would be working on a job so shortly before an inspection. Cervenka's phone records indicate that he received a phone call about ten minutes before the accident from a company that his business partner testified hauls equipment for THW. The records also show that his phone had been using data for six minutes at the time of the wreck. The police accident report states that Cervenka told the officer he was looking for something in his passenger seat and did not realize the vehicles in front of him were stopping.[2] After the wreck, Cervenka called his business partner before he called his wife. His phone records showed he had calls with other companies THW does business within twenty minutes after the accident; this activity is consistent with phone calls between 1 p.m. and 3 p.m. the previous three business days that appear to be business-related. Further, Cervenka stated in response to an interrogatory that "[a]fter the accident, I went home, picked up a rental car, and went to my office."

traveling to and from work); *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 723 n.9 (Tex. App.—Austin 2004, no pet.) (special-mission exception, which imposes liability if employee does special mission for employer while commuting, is inapplicable where evidence showed employee was not commuting between home and work).

[2] His deposition testimony that he reached over while braking to avoid the collision to prevent documents from sliding off the seat does not conclusively rebut the police report but creates an issue for the factfinder to resolve.

Considering this evidence in the light most favorable to the nonmovant and disregarding all contrary inferences,[3] we conclude that the totality of the evidence comprises more than a scintilla of evidence showing that Cervenka was acting within his role as THW's agent at the time of the collision. His general pattern of doing some work in the afternoon including phone calls on previous business days, the police report that he was looking for something on the seat of his THW-branded vehicle, the use of phone data leading up to the crash, his use of the phone to call work-related numbers shortly before and after the accident, and his return to work after the accident—viewed most favorably to Cook—create a lattice of circumstances that would enable reasonable and fair-minded people to develop more than a mere suspicion or surmise that Cervenka was acting within his role as an agent of THW at the time of the accident.[4] The trial court erred by granting summary judgment on Cook's claim that THW is vicarious liability for Cervenka's actions.

**THW's direct negligence**

The trial court granted a take-nothing summary judgment on Cook's claim that THW failed to act as a reasonably prudent employer by failing to establish and enforce adequate safety procedures regarding its employee's performance of his duties. The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The plaintiff must establish both the existence and the violation of a duty owed to the plaintiff by

---

[3] *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

[4] We reach this conclusion without relying on any presumption relating to ownership of the vehicle. *See Robertson Tank Lines, Inc., v. Van Cleave,* 468 S.W.2d 354, 357 (Tex. 1971) (rebuttable presumption that employee acted in scope of employment when driving company-owned vehicle).

the defendant to establish liability in tort. *Id.* Moreover, the existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.* (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex.1983)). In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Id.*

Cook argues that companies have a duty to establish and enforce safety rules so that employees can perform their duties with reasonable safety. *See Brookshire Bros., Inc. v. Lewis*, 997 S.W.2d 908, 916 (Tex. App.—Beaumont 1999, pet. denied); *see also Greater Houston Transp. Co. v. Zrubeck*, 850 S.W.2d 579 (Tex. App.—Corpus Christi-Edinburg 1993, writ denied). In *Zrubeck*, a driver transporting a quadriplegic passenger in a company van secured the passenger's wheelchair to the van but failed to secure the passenger by seatbelt to the wheelchair; when the van made a sudden stop, the passenger was ejected from the wheelchair and injured. 850 S.W.2d at 581-83. The company required seat-belt usage, but the evidence showed that the employee training lacked the necessary detail and emphasis, employees were not admonished for failing to adhere to the safety policies, and managers were not shocked by the incident. *Id.* at 591-92. THW's Employee Handbook contains a vehicle safety policy that addresses vehicle safety, requiring employees to comply with relevant laws, use seat belts, maintain insurance, inform the company of any traffic-related convictions or license suspensions, and report accidents involving vehicles they use on company business. Cook asserts that evidence shows THW's negligence because the employee supervisor did not draft the employee handbook and was not familiar with relevant provisions, THW does not keep records of

8

work-related driving or require a driving log, and THW did not investigate the collision. Cook also cited Cervenka's testimony that he did not know why he and THW were being sued, did not inquire about Cook's injuries, and refused to take responsibility for her injuries.

THW moved for summary judgment on Cook's direct negligence claim against THW contending that no evidence shows that THW owed Cook a duty or breached any duty, or that any such breach caused Cook's injury. THW argues that a company has no duty to adopt safety rules or warn or caution employees or officers about a danger unless the job is dangerous or complex and the company knows the danger and has reason to know the employee or officer is unaware of the danger. *Allen v. A&T Transp. Co.*, 79 S.W.3d 65, 70 (Tex. App.—Texarkana 2002, pet. denied); *see also Zissa v. Euton's Harley Davidson*, No. 13-11-00585-CV, 2012 WL 6955494, at *3 (Tex. App.—Corpus Christi-Edinburg Dec. 13, 2012, pet. denied) (mem. op.). In *Allen*, a truck driver alleged that his tanker truck turned over because its cargo shifted at low speed. He sued his employer for failing to warn him of that risk and train him on how to deal with it. *Allen*, 79 S.W.3d at 70. The court found no duty to warn because companies are not required to train an experienced driver like Allen on the standard characteristics of the operation of that type of vehicle. *Id.* at 71. Similarly, in *Zissa*, the court held that the company had no duty to instruct employees who are experienced motorcycle riders on how to test drive a motorcycle or to implement safety rules where the dangers are obvious or common knowledge. *Zissa*, 2012 WL 6955494, at *3.

Cook argues that THW's duty to train arose under a broader obligation to establish and enforce safety rules so that an employee may perform assigned duties with reasonable safety. Cook notes that the *Allen* court described the duty to warn and train

employees about operating dangerous equipment used as part of work as an "offshoot" of its broader duty to hire, train, and supervise. 79 S.W.3d at 70.

We find no authority or evidence supporting the imposition of a duty on THW to train Cervenka to avoid distractions while driving his vehicle. There is no evidence that driving the pickup truck—even one, as Cervenka described it, twice the size of a small car—was so complex or hazardous that the dangers incident to driving it were not obvious or commonly known and fully understood by Cervenka. It is the same vehicle that Cervenka used for personal travel. There is no evidence that Cervenka's truck was more dangerous than the tanker truck found not to be an unusually dangerous vehicle in *Allen*, *see* 79 S.W.3d at 70-71, or that THW knew or had reason to know that Cervenka was unaware that driving as alleged while conducting business on a cell phone and looking away from traffic was dangerous. Cook's evidence such as the drafting of and familiarity with THW's handbook and the absence of post-accident investigation are no evidence that Cervenka's duties at THW prompted a duty to enact and enforce safety rules about attentively driving a pickup truck. Because there is no evidence that a duty existed on the facts in this case, the trial court did not err by granting the take-nothing summary judgment on Cook's direct negligence claim against THW.

The trial court also granted a take-nothing summary judgment on Cook's claim that THW was liable for gross negligence. Because a finding of negligence is a prerequisite to a finding of gross negligence, *Douglas v. Hardy*, 600 S.W.3d 358, 372 (Tex. App.—Tyler 2019, no pet.), we conclude that the trial court did not err by granting a take-nothing summary judgment on Cook's gross-negligence claim directly against THW.

Finally, though we find no error in the trial court's decision to sever Cook's claims against THW that it had resolved by summary judgment from her claims against

10

Cervenka,[5] the trial court can assess whether consolidation of the claims is appropriate on remand of the vicarious-liability claim.

## CONCLUSION

We reverse the take-nothing judgment on the allegation that THW is vicariously liable for Cook's injuries allegedly due to Cervenka's negligence and remand that issue for further proceedings.  We otherwise affirm the judgment on the merits, noting that the trial court can consider whether to consolidate the remanded proceeding with any pending action between Cook and Cervenka.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed in Part, Reversed in Part, and Remanded in Part
  Concurring and Dissenting Opinion by Justice Theofanis

Filed:  February 16, 2024

---

[5] *Dorsey v. Raval*, 480 S.W.3d 10, 15 (Tex. App.—Corpus Christi-Edinburg 2015, no pet.)(no error in severing claims including vicarious liability against one party on which final judgment had been granted from pending claims against other parties including direct claim for negligence).