Jochum SCHIEVINK and Vicki Schievink, Appellants,

v.

WENDYLOU RANCH, INC., Appellee.

No. 11–06–00025–CV.

Court of Appeals of Texas, Eastland.

June 21, 2007.

Rehearing Overruled July 26, 2007.

Richard L. Bourland, Bourland & Kirkman, L.L.P., Fort Worth, for appellants.

Alexander N. Beard, Michael A. Hummert, Bishop & Hummert, Dallas, James J. Elliott, Coan & Elliott, L.L.P., Stephenville, Diane Hightower, Law Office of Diane Hightower, Whitney, for appellee.

Panel consists of WRIGHT, C.J., STRANGE, J., and McCLOUD, S.J.[1]

## OPINION

AUSTIN McCLOUD, Senior Justice (Retired).

Plaintiff landowners, Jochum Schievink and Vicki Schievink, appeal from a summary judgment granted in favor of Wendylou Ranch, Inc., the owner of the land surrounding the Schievinks' property. The Schievinks sued Wendylou for trespass and for breaching a duty as an adjoining landowner after Rudy's Fencing, a fence builder hired by Wendylou, bulldozed some trees on the Schievinks' land. Wendylou asserted that it was entitled to a traditional summary judgment because the undisputed summary judgment evidence showed that Wendylou did not trespass on the Schievinks' land or instruct Rudy's

---

1. Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

Fencing to trespass and because Wendylou is not liable for the trespass of Rudy's Fencing—an independent contractor. The trial court granted Wendylou's motion for summary judgment. We affirm.

### Issues and Standard of Review

In three issues on appeal, the Schievinks argue that summary judgment was improper because there are genuine issues of fact regarding (1) whether Wendylou breached a duty as an adjoining landowner by failing to instruct Rudy's Fencing as to the property line, (2) whether Rudy's Fencing was an independent contractor, and (3) whether Wendylou was negligent in failing to give instructions to Rudy's Fencing even if it was an independent contractor.

We will apply the well-recognized standard of review for summary judgment. A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). In order for a defendant to be entitled to summary judgment, it must either disprove an element of each cause of action or establish an affirmative defense as a matter of law. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). Once the movant establishes a right to a summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979). When reviewing a summary judgment, the appellate court takes as true evidence favorable to the nonmovant. *Am. Tobacco,* 951 S.W.2d at 425; *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### Summary Judgment Evidence

The summary judgment evidence established that the Schievinks own approximately 300 acres of land and that their land is completely surrounded by Wendylou, a 4,500–acre exotic game ranch. Wendylou hired Rudy's Fencing to build a game fence around parts of Wendylou. The fence work was done in stages. The manager of Wendylou, Mike Odell, gave verbal instructions to Rudy's Fencing about where the fence should be. Odell's deposition and affidavit indicate that Rudy's Fencing was an independent contractor, not an employee. Rudy's Fencing used its own equipment and, other than being told where to start, stop, or put a gate, was not instructed as to the details of building the fence or clearing the fence line.

Odell walked the boundary line with Rudy's Fencing's on-site supervisor, Efrain Rulio Villareal. They walked the fence line in phases, only going as far as the fence builders were expected to go in a given period of time. Odell checked the progress occasionally but did not supervise the day-to-day activities. As each phase of the fence was completed, they walked the fence line for the next phase. Odell instructed Rudy's Fencing to build the new fence two to three feet inside the old fence running along the boundary line to keep from encroaching upon the Schievinks' property. Odell had not yet walked the fence line with Villareal at the point where the trespass occurred on July 20, 2004; he had expected the previous phase through a creek to take longer than it did.

In order to build the fence, Rudy's Fencing used a bulldozer to clear the fence line. The bulldozer was operated by Ignacio Bustamante. At the instruction of Villareal, who was confused about his location, Bustamante cut the boundary fence and followed another fence row into the

Schievinks' property. The southern boundary line of the Schievinks' property was zigzagged, and Bustamante made a right turn at a corner where he should have gone left. Bustamante had bulldozed a strip of land approximately 15 feet wide by 1,600 feet long before Jochum Schievink came and informed Villareal that they were on his property.

### Trespass and Duty of an Adjoining Landowner

■■■ In their first issue, the Schievinks contend that there is a genuine issue of fact concerning Wendylou's breach of a duty owed to them as adjoining landowners to instruct Rudy's Fencing as to the correct property line. The Schievinks assert that a landowner who intends to have timber cut on his property owes a duty to adjoining landowners to ascertain the boundary line of the adjoining land with diligence and care and that a failure to discharge this duty subjects the landowner to liability for trespass. *See Burris v. Krooss,* 563 S.W.2d 875, 877 (Tex.Civ.App.-Eastland 1978, no writ); *see also Kirby Lumber Corp. v. Karpel,* 233 F.2d 373, 375 (5th Cir.1956). A person may be liable for trespass if he aids, assists, advises, or causes another to enter the property. *Kirby Lumber,* 233 F.2d at 375; *McDaniel Bros. v. Wilson,* 70 S.W.2d 618, 621 (Tex. Civ.App.-Beaumont 1934, writ ref'd); RESTATEMENT (SECOND) OF TORTS § 158(a) & cmt. j (1965). Under this theory of liability, a landowner may be liable even though the person entering the adjoining land is an independent contractor. *Kirby Lumber,* 233 F.2d at 375; *Cummer Mfg. Co. v. Copeland,* 35 S.W.2d 758 (Tex.Civ.App.-Texarkana 1931, no writ).

Wendylou established that there were no genuine issues of fact regarding the trespass or the breach of any duty that Wendylou may have owed to the Schievinks to ascertain the correct boundary line. The summary judgment evidence established that Wendylou hired Rudy's Fencing to construct a game fence and that Wendylou's manager gave instructions to Rudy's Fencing as to the correct location of the boundary. Odell instructed Rudy's Fencing to follow the old fence line, which was the boundary, and to stay two to three feet inside the old fence. Rudy's Fencing did not follow Odell's instructions; instead, Bustamante cut the old fence and entered the Schievinks' property. Villareal admitted that he was confused and that he made the decision to turn right instead of left. Contrary to what had been the customary operating procedure, Villareal did not ask Odell for any further instructions before bulldozing the next section of fence line even though Villareal and Odell had not yet walked that section.

The Schievinks contend that Rudy's Fencing followed flags or markers onto the Schievinks' property and that these flags had been placed there by Odell. However, the summary judgment evidence does not support their contention. Although there were some flags in the vicinity of the boundary line, Odell averred that these were not markers for Rudy's Fencing to follow, that he had given the fence builders verbal instructions only, and that he did not put out any of the flags or markers in question. Odell indicated in his deposition that the flags were probably placed there by the surveyor. According to Jochum Schievink, the Schievinks' property had been surveyed immediately before they bought it and there were survey markers at various points because the land had first been offered in parcels. The survey was dated February 2003.

Villareal's deposition testimony revealed that he saw flags or markers on the gate, found the corner pin in the ground, saw the dairy in the distance, and mistakenly

thought that he was at the southwest corner of the Schievinks' property instead of a corner in the midsection of their southern boundary. Villareal admitted that Odell told him to stay two to three feet inside the old fence. The deposition testimony of Bustamante showed that he did not see any ribbons or markers on any fence and that he followed Villareal's directions when he entered the Schievinks' property. Although Bustamante did not see any ribbons, he stated that there were markers at the corners of the boundary. He had no knowledge of who marked the corners. Furthermore, the Schievinks did not know who put out any of the flags, and they had no knowledge of anybody from Wendylou instructing Rudy's Fencing to enter their property.

We hold that there is no genuine issue of fact concerning Wendylou's breach of any duty that it owed to the Schievinks to instruct Rudy's Fencing as to the correct property line. The first issue is overruled.

*Independent Contractor*

■■ The Schievinks contend in their second issue that the summary judgment evidence created a genuine issue of fact as to whether Rudy's Fencing was an independent contractor. If Rudy's Fencing, Villareal, and Bustamante were employees of Wendylou, rather than independent contractors, then Wendylou could be liable for their negligent acts under the doctrine of respondeat superior. Under this doctrine, an employer is vicariously liable for the negligence of an employee *acting within the scope of his employment* even though the employer has not personally committed a wrong. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945 (Tex.1998). Conversely, a person who hires an independent contractor is generally not liable for the acts of an independent contractor unless the employer exercises sufficient control over the details of the independent contractor's work. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791–92 (Tex. 2006); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex.2001).

■■ An independent contractor has been defined as "any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Indus. Indem. Exch. v. Southard*, 138 Tex. 531, 160 S.W.2d 905, 907 (1942). There are several factors to consider in determining whether or not a worker is an independent contractor: (1) the independent nature of his business; (2) his obligation to furnish necessary tools, supplies, and material to perform the job; (3) his right to control the progress of the work, except as to final results; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job. *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 584–85 (Tex.2005) (citing *Indus. Indem. Exch.*, 160 S.W.2d at 906). When the material underlying facts are not in dispute and can give rise to only one reasonable conclusion, the issue of whether a worker is an employee or an independent contractor is a question of law. *Id.* at 585.

The summary judgment evidence in this case established that Rudy's Fencing was a sole proprietorship that had been in the business of building fences since 1981. Rudy's Fencing generally employed about twenty-five employees. Wendylou solicited bids for the fence-building job, and Rudy's Fencing submitted a bid that was priced by the foot. Upon being awarded the job, Rudy's Fencing provided a crew of five people to do the job at Wendylou. Rudy's Fencing also furnished its own equipment and tools. Nobody at Wendylou oversaw the day-to-day activities of the

fence building. Odell checked on the fence occasionally and told Villareal where to build the fence and the gates. Odell did not control the details of building the fence or clearing the fence line.

The Schievinks point to summary judgment evidence indicating that Odell was the "boss." While the Schievinks' attorney was deposing the owner of Rudy's Fencing, the following exchange occurred:

Q: Did you recognize that Mr. Odell was the boss of this job and told you what he wanted done and when?

A: I did, because when—when I turned in my bid to Mr. Elliott, he said—at that time that the very first phase, it was [Odell]'s dad that was in charge. Then he went ill and then [Odell] took over. So he said, "Just if anything comes up and you need, if you've got any questions, ask [Odell]."

Q: Mike Odell was the boss?

A: At that point then, after—after his father.

The context in which Odell was referred to as the "boss" does not indicate that Odell controlled Rudy's Fencing, Villareal, or Bustamante as an employee but, rather, that Odell was the "boss" in charge of the ranch and, as ranch manager, told them where to build the fence and where to put the gates. There is no summary judgment evidence indicating that Rudy's Fencing was an employee of Wendylou; the summary judgment evidence establishes as a matter of law that Rudy's Fencing was an independent contractor. Consequently, the second issue is overruled.

*Control over Independent Contractor*

In their third issue, the Schievinks assert that there is a genuine issue of fact concerning the negligence of Wendylou in failing to give instructions to Rudy's Fencing concerning the trespass. The Schievinks argue that, even if Rudy's Fencing

was an independent contractor, Wendylou retained sufficient supervisory control over Rudy's Fencing to subject it to liability for failing to use reasonable care in the exercise of its supervisory control so as to prevent injury to others. *See Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19–20 (Tex.1987); *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985). In *Redinger,* the court adopted the following rule:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

689 S.W.2d at 418.

■ Assuming that Wendylou had a duty to ascertain the correct boundary line and to instruct Rudy's Fencing in that respect and that Wendylou retained control over the location on which Rudy's Fencing was to build the fence, Wendylou had a duty to use reasonable care in the exercise of that control. However, as discussed with respect to the Schievinks' first issue, there is no summary judgment evidence indicating that Wendylou breached any duty owed to the Schievinks. Wendylou's manager gave verbal instructions to Rudy's Fencing; walked the fence line in sections with the on-site supervisor for Rudy's Fencing, showing him where to build the fence and gates; and instructed Rudy's Fencing to stay two to three feet inside the old fence—which was the boundary. The summary judgment evidence is undisputed that Rudy's Fencing, on its own initiative, made the decision to cut the old fence and enter the Schievinks' property with the bulldozer. Therefore, there is no genuine issue of fact concerning whether Wendylou breached a duty to use reasonable care in the exercise of any control

it retained over Rudy's Fencing. The Schievinks' third issue is overruled.

We hold that Wendylou established by summary judgment evidence that it did not commit the trespass; that it did not aid, assist, advise, or cause Rudy's Fencing to enter the Schievinks' property; that it did not fail to ascertain the correct boundary line; that it did not fail to instruct Rudy's Fencing as to the correct boundary; that Rudy's Fencing was an independent contractor; and that Wendylou did not breach any duty that it owed to the Schievinks. The Schievinks failed to come forward with more than a scintilla of evidence to create a genuine issue of material fact that would preclude summary judgment. Wendylou, therefore, was entitled to judgment as a matter of law, and the trial court properly granted Wendylou's motion for summary judgment.

The judgment of the trial court is affirmed.