

NUMBER 13-13-00440-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

---

DANIEL E. ARNOLD,                                                    Appellant,

v.

GERARDO GONZALEZ,                                                    Appellee.

---

On appeal from the 398th District Court
of Hidalgo County, Texas.

---

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Garza and Perkes
Memorandum Opinion by Chief Justice Valdez

Appellant, Daniel E. Arnold, appeals the judgment in favor of appellee, Gerardo
Gonzalez. By four issues, Arnold contends: (1) Gonzalez's suit against him is barred by
the Workers' Compensation Act; (2) the trial court abused its discretion when it refused
to submit his requested jury question regarding the right to control; (3) the evidence is
legally and factually insufficient to support the jury's award of damages for Gonzalez's

loss of future earning capacity; and (4) the trial court erred in imposing joint and several liability on Arnold for damages caused by Gonzalez's employer. We affirm.

## I. BACKGROUND

Gonzalez performed maintenance on forklifts for A-W Produce Company ("AW"). Arnold is the president of AW. Gonzalez injured his arm while working as an employee of AW. On the morning of the accident, Javier Luna, an AW supervisor, asked Gonzalez to help another employee, Jesus Montelongo, set up a section of a conveyor belt, which was located on property owned by Arnold. There was no guard on the belt because the set-up of the belt had not yet been completed. Gonzalez reached for a wrench and his hand got caught in the conveyor belt. Gonzalez broke his forearm in several places and sustained severe injuries requiring skin grafts. It is undisputed that Gonzalez's injury was covered by workers' compensation.

Gonzalez filed negligence and premises liability claims against Arnold, among other defendants. Evidence adduced at trial indicated that Arnold owned the warehouse where Gonzalez was injured and personally designed and assembled heavy machinery at the property including several conveyors. There is disputed evidence regarding whether AW leased the property from Arnold, but it is undisputed that Arnold owns the property where Gonzalez was injured. The evidence showed that much of the heavy machinery had never been moved since it had been installed. Gonzalez claimed that the emergency cut-off switch was located on the opposite wall from the conveyor belt and that the distance from the belt to the switch, in part, caused his injuries.

Arnold moved for summary judgment, arguing that under the Texas Labor Code section 408.001(a), the Texas Workers' Compensation Act ("TWCA"), worker's

2

compensation was Gonzalez's exclusive remedy for a work-related injury. *See* TEX. LAB. CODE ANN. § 408.001(a) (West, Westlaw through Ch. 46 2015 R.S.). Gonzalez responded that he was not suing Arnold in his capacity as his employer but only in his capacity as the premises owner.

At the jury trial, the trial court granted Gonzalez's motion in limine regarding any mention of workers' compensation. The parties stipulated that (1) Gonzalez was acting in the course and scope of his employment, (2) AW was a subscriber under the TWCA, and (3) Gonzalez received worker's compensation benefits for his injuries. The trial court denied Arnold's request to include a jury question on whether Arnold exercised or retained control over the manner in which the work was performed. The jury found that Arnold was negligent and that he was sixty-five percent responsible for Gonzalez's injuries. The jury also found AW twenty percent responsible as a designated responsible third party. The trial court made Arnold jointly and severally liable for all of the damages attributable to AW. The jury awarded $2,614,000 in past and future damages, including $465,000 in lost future earning capacity. Arnold filed a motion for judgment notwithstanding the verdict and motion for new trial. Both were denied. This appeal ensued.

## II.    EXCLUSIVITY OF REMEDY UNDER WORKERS' COMPENSATION ACT

By his first issue, Arnold contends that as a matter of law he was an employee of AW; thus, because Gonzalez received workers' compensation benefits, Gonzalez's suit against him is prohibited by the exclusivity provision of 408.001(a) of the TWCA, which provides that recovery of workers' compensation benefits is the exclusive remedy against the employer or an agent or employee of the employer for the death of, or a work-related injury sustained by, the employee. *See* TEX. LAB. CODE ANN. § 408.001(a). Gonzalez

3

responds that whether Arnold was in fact an employee of AW was disputed at trial, Arnold failed to request a jury question on the issue, and therefore, Arnold has waived his affirmative defense that workers' compensation exclusivity applies.

"Recovery of workers' compensation benefits is the sole remedy of an injured employee covered by workers' compensation insurance against the employer, agent of the employer, or employee of the employer, absent an intentional act to harm or gross negligence by the employer." *Burkett v. Welborn*, 42 S.W.3d 282, 287 (Tex. App.—Texarkana 2001, no pet.) (citing TEX. LAB. CODE ANN. § 408.001(a); *Darensburg v. Tobey*, 887 S.W.2d 84, 86–87 (Tex. App.—Dallas 1994, writ denied)). A co-employee accused of negligent conduct is exempt from tort actions by the exclusive remedy provision, and the immunity of the employer extends to co-employees. *Burkett*, 42 S.W.3d at 287; *see also Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 75 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (concluding that the employer was immune from premises liability cause of action because employee had received workers' compensation). However, Texas courts have determined that section 408.001's reference to "employee of the employer" includes only an employee for whose conduct the employer is legally responsible under the doctrine of respondeat superior. *Burkett*, 42 S.W.3d at 288–89; *Darensburg*, 887 S.W.2d. at 86–87 (explaining that in Texas, "[a]n 'agent, servant, or employee' within the meaning of Section 3(a) of the workers' compensation statute is one for whose conduct the employer would be legally responsible under the doctrine of respondeat superior"); *see also Long v. Turner*, 871 S.W.2d 220, 223 (Tex. App.—El Paso 1993, writ. denied) ("In addressing the meaning of the former 'exclusive remedy' statute, the Supreme Court has found that an agent, servant, or employee within the meaning of the statute is ordinarily one for whose

4

conduct the employer would, aside from the Workmen's Compensation Act, be legally responsible under the doctrine of respondeat superior.") (citing *McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex. 1964)). "In order to impose liability upon an employer for the negligence of his employee under the doctrine of respondeat superior, the acts of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Long*, 871 S.W.2d at 224.

> Under the theory of respondeat superior . . . an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment. . . . The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment.

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). For example,

> [i]n *Ward v. Wright*, 490 S.W.2d 223 (Tex. Civ. App.—Fort Worth 1973, no writ), two company employees, while on their lunch hour and not on employer business, were involved in a collision between their respective automobiles as they both were in the process of leaving the company parking lot. The Fort Worth Court of Appeals held that because it was "obvious that the parties' common employer would not, under the Respondeat superior doctrine, have been responsible for the negligence of either of the parties to the automobile collision[,]" the defendant driver [co-employee] was not immune from liability under the exclusive remedy provision [of the TWCA] (Article 8306, Section 3) and was not therefore entitled to a summary judgment.

*Long*, 871 S.W.2d at 223–24.

Here, Gonzalez sued Arnold under a premises liability theory claiming that "[b]ecause of the negligent manner in which the warehouse [that Arnold owned and/or occupied] had been set up, designed, and operated, there was no readily available way

5

for him to avoid or minimize the serious injuries that ensued after he did become entangled [in the conveyor belt]."[1]  Gonzalez further claimed the following:

> After acquiring the subject property, [Arnold] had negligently set up a network of machines, motors, electrical circuitry, and fixtures which he knew would be utilized by various individuals, including employees of various businesses.  Although he had no expertise, Arnold designed the premises in a way that failed to properly account for the safety of his invitees and licensees, and which created [foreseeable] risks to individuals he knew would likely be on the property.

At trial, the issue of whether Arnold designed the warehouse's layout as part of his duties as AW's employee was contested by the parties.[2]  Arnold insisted that when he set up the warehouse and installed the conveyers, he was acting in furtherance of AW's business and that his acts fell within the scope of his work duties for AW.  However, Gonzalez disputed Arnold's assertions and presented evidence to the jury that impeached Arnold's credibility, such as evidence that Arnold had incorrectly stated in a lease agreement with L&M Companies and in a petition filed in a separate lawsuit by Arnold and AW that AW owned the premises.  AW's status as a lessee of the warehouse was also contested by the parties.  Arnold consistently claimed that he had leased the warehouse where Gonzalez had been injured to AW and that AW had control over the premises and was responsible for the premises' condition.  However, on direct examination by Gonzalez, Arnold agreed that there was no documentation or lease showing that AW actually leased the premises from Arnold.  Arnold claimed that he had an oral lease with AW's representative, who happened to be Arnold, regarding AW's duty

---

[1] Gonzalez also sued L&M Companies, claiming it too occupied the premises where Gonzalez had been injured.  L&M had leased a portion of the facility from Arnold.

[2] It was Arnold's burden at trial to prove his affirmative defense of the TWCA's exclusive remedy provision.  Therefore, our analysis is the same whether Arnold claims to be AW's employee or agent.

6

to maintain the premises. And, Arnold stated that he, only as AW's employee and agent, was responsible for repairs on the premises. Gonzalez pointed out and Arnold agreed that Arnold also rented the premises to L&M Companies for a period of time and that the two had a written lease.

The trial court instructed the jury as follows: (1) "With respect to the condition of the premises, [Arnold was] negligent if . . . the condition posed an unreasonable risk of harm and" Arnold "knew or reasonably should have known the danger, and" Arnold "failed to exercise ordinary care to protect" Gonzalez "from the danger, by both failing to adequately warn" Gonzalez "of the condition and failing to make the condition reasonably safe"; and (2) "'Ordinary care' when used with respect to [Arnold] . . . as owners or occupiers of the premises, means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstances." Arnold did not request a jury question regarding whether he had set up the layout of the warehouse in furtherance of AW's business while acting in the course and scope of his employment as AW's agent or employee.

Arnold argues that even if the evidence supports a finding that he owned the premises, so long as his claim that he was AW's employee was undisputed at trial, we must reverse the jury's verdict because Gonzalez received workers' compensation benefits making Arnold immune from suit. We disagree.

"The failure to request a jury instruction on an affirmative defense results in waiver of that ground by the party relying on it unless the issue was conclusively established." *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). "The [workers' compensation act's] exclusive remedy provision is an

7

affirmative defense that the defendant must plead and prove." *Warnke v. Nabors Drilling USA, L.P.*, 358 S.W.3d 338, 343 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (op. on reh'g) (citing *Exxon Corp. v. Perez*, 842 S.W.2d 629, 630–31 (Tex. 1992); *AMS Const. Co. v. K.H.K. Scaffolding Houston, Inc.*, 357 S.W.3d 30, 43 (Tex. App.—Houston [1st Dist.] 2011, no pet.)); *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 763 (Tex. App.—El Paso 2000, no pet.) (explaining that the failure to request and tender a proper jury charge on the issue, waives any complaint relating to an affirmative defense on appeal).

Here, Arnold's credibility was at issue, and the evidence was contested regarding whether Arnold acted in furtherance of AW's interests when he committed the alleged negligent acts.[3] Arnold did not request a question in the jury charge concerning whether he was acting in furtherance of AW's interests when he set up the warehouse's layout and installed the conveyor. Given that the evidence was contested that Arnold was acting in furtherance of AW's interest when he allegedly committed the negligent acts or omissions, we are unable to conclude that the evidence conclusively established that Arnold was AW's agent or employee within the meaning of the TWCA. *See Burkett*, 42

---

[3] In his brief, Arnold does not argue that he acted in furtherance of AW's interests when he designed the layout of the warehouse. Instead, he claims that it was undisputed that he was AW's employee or agent as a matter of law. In his reply brief, Arnold states that it was undisputed that he undertook all actions regarding the warehouse in his capacity as AW's agent or employee because that is the only evidence that was presented. We disagree because whether he was acting in furtherance of his duties as an AW employee is a question of fact for the jury to have determined. Thus, they were free to believe or disbelieve Arnold that he set up the warehouse in furtherance of AW's interests and not because he planned on leasing the premises to other companies such as L&M. *See Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet) (citing *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 515 (Tex. 1995)). Moreover, there was evidence that Arnold designed the configuration of the complained-of mechanisms and that those machines, which included a processing line conveyor, were fixed in place in the warehouse for years and attached to mechanized pieces of equipment that were affixed to the walls of the warehouse and bolted to the floors—acts that a jury could have believed were undertaken in order to rent the facility to other entities.

S.W.3d at 288–89 (defining the term "employee of the employer" as an employee for whose conduct the employer is legally responsible under the doctrine of respondeat superior); *Darensburg*, 887 S.W.2d. at 86–87.  Moreover, in this case, whether Arnold was acting in furtherance of AW's interests is a question of fact as it was contested at trial.  *See Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet.) (explaining that "course and scope of employment is generally a fact issue like negligence or proximate cause") (citing *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 515 (Tex. 1995)); *see also Arrellano v. State Farm Fire & Cas. Co.*, 191 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("Whether an individual acts within the course and scope of employment is generally a question of fact when more than one inference may be drawn from the evidence.").

Therefore, by not requesting a jury question regarding whether he was acting in furtherance of AW's interests, Arnold has not preserved his affirmative defense that the workers' compensation exclusive remedy provision applies in this case.  *See Abraxas Petroleum Corp.*, 20 S.W.3d at 763; *see also Warnke*, 358 S.W.3d at 343 ("The [TWCA's] exclusive remedy provision is an affirmative defense that the defendant must plead and prove.") (citing *Exxon Corp.*, 842 S.W.2d at 630–31; *AMS Const. Co.*, 357 S.W.3d at 43).

Our conclusion is consistent with our sister court's opinion in *Burkett* which involved similar facts.  42 S.W.3d at 282.  In that case, Kenneth Burkett was injured while performing work on a trailer home owned by his employer, but located on land owned individually by Rosalie Welborn, the sole-shareholder of the corporation employing Burkett.  *Id.* at 285.  Welborn was also employed as the president of the corporation.  *Id.*

9

Burkett received workers' compensation benefits as an employee of the corporation, and later brought a premises liability claim against Welborn. *Id.* at 286. The trial court granted summary judgment in favor of Welborn, ruling that Burkett's recovery under workers' compensation was a bar to further recovery. *Id.* On appeal, Welborn argued that the exclusive remedy available to Burkett against his co-employee is recovery of workers' compensation benefits. *Id.* at 288. In addressing this argument, the court noted that the exclusive remedy provision bars recovery against a co-employee only where the employer is legally responsible for the conduct under the doctrine of respondeat superior. *Id.* at 288–89. The court explained that although the corporation was responsible for the trailer home on Welborn's property, this did not "in itself distinguish her from the duties of [a] property owner[,]" owed to an invitee. *Id.* at 289. The court determined that the employer would not be responsible for Welborn's acts or omissions as a property owner. *Id.* On that basis, the court held that the exclusive remedy provision did not bar Burkett's claim against Welborn and reversed the trial court's summary judgment granted in favor of Welborn. *Id.* at 290.

Like the premises owner in *Burkett*, Arnold's status as a co-employee does not bar Gonzalez's negligence claims, because AW would not be legally responsible for Arnold's acts or omission as a landowner under the doctrine of respondeat superior. *See id.* Accordingly, we overrule Arnold's first issue.[4]

---

[4] Arnold also argues that by holding him responsible for Gonzalez's injury, the trial court, in essence, applied the dual capacity doctrine, which has not been adopted by the Texas Supreme Court and has been rejected by some Texas courts of appeals. The dual capacity doctrine provides that although an employer is usually shielded from tort liability by the exclusive remedy principle of the TWCA, the employer may become liable to his own employee, who received workers' compensation benefits, if the employer occupies a second capacity that generates obligations unrelated to those flowing from its primary capacity as an employer. *Payne v. Galen Hosp. Corp.*, 28 S.W.3d 15, 20 (Tex. 2000). The dual capacity doctrine is applicable in cases where the employer/defendant is entitled to claim immunity from suit under the TWCA.

10

### III.   JURY QUESTION

By his second issue, Arnold contends that the trial court abused its discretion when it refused to submit his requested jury question regarding the right to control. Pursuant to Pattern Jury Charge 66.3, Arnold requested the following question:

> Did Daniel E. Arnold, Individually, exercise or retain some control over the manner in which the injury causing activity was performed, other than the right to order the work to start or stop or to inspect progress or receive reports?
>
> Answer "Yes" or "No."

Gonzalez responds that the trial court correctly denied Arnold's requested question because it is not applicable in this case.

A trial court's decision whether to submit a particular jury question is reviewed for an abuse of discretion. *Park N. Serv. Ctr., L.P. v. Applied Circuit Tech., Inc.*, 338 S.W.3d 719, 721 (Tex. App.—Dallas 2011, no pet.) (citing *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Henry v. Masson*, 333 S.W.3d 825, 848–49 (Tex. App.—Houston [1st Dist.] 2010, no pet.)). An abuse of discretion occurs if the trial court acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court must submit a properly requested jury question if the issue is raised by the pleadings and evidence and is necessary to enable the jury to render a verdict.

*See id.*

We disagree with Arnold that this case implicates the dual capacity doctrine because Arnold did not show that he is entitled to immunity under the TWCA as explained above. It was not conclusively established that Arnold was acting as an 'agent, servant, or employee' within the meaning of the TWCA for whose conduct AW would have been legally responsible under the doctrine of respondeat superior. *See Burkett v. Welborn*, 42 S.W.3d 282, 288–89 (Tex. App.—Texarkana 2001, no pet.) (concluding that co-employee who owned premises was not entitled to the workers' compensation defense because there was no evidence that the employer could be held vicariously liable for the co-employee's liability as a premises owner to an invitee). Thus, the dual capacity doctrine is inapplicable to the facts of this case.

11

TEX. R. CIV. P. 278; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002); *Park N. Serv. Ctr.*, L.P., 338 S.W.3d at 721. "A trial court may refuse to submit a question only if there is no evidence in the record to warrant its submission." *Park N. Serv. Ctr.*, *L.P.*, 338 S.W.3d at 721 (citing *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992) (per curiam); *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 824 (Tex. App.—Dallas 2003, pet. denied)).

As Arnold points out in his reply brief, Pattern Jury Charge 66.3 applies to property owners. *See id.* However, a property owner is only entitled to such an instruction if the injury was caused by "the negligent activity of an independent contractor" or if the premises defect was created by an independent contractor's work.[5] *Braudrick v. Wal-Mart Stores, Inc.*, 250 S.W.3d 471, 476 (Tex. App.—El Paso 2008, no pet.); *see also* TEX. R. CIV. P. § 95.003). "An independent contractor has been defined as 'any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details.'" *Schievink v. Wendylou Ranch, Inc.*, 227 S.W.3d 862, 866 (Tex. App.— Eastland 2007, pet. denied) (quoting *Indus. Indem. Exch. v. Southard*, 160 S.W.2d 905, 907 (1942)). In making a determination regarding whether someone is an independent contractor, we consider several factors, which include the following:

> (1) the independent nature of his business; (2) his obligation to furnish necessary tools, supplies, and material to perform the job; (3) his right to control the progress of the work, except as to final results; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job.

---

[5] Arnold testified that he owned the premises where Gonzalez was injured and that AW was his lessee. Arnold makes no argument on appeal that AW was an independent contractor and points to no evidence in the record supporting such a conclusion.

*Id.*

Arnold does not provide citation to the record regarding where the evidence raised the issue of AW's or Gonzalez's status as an independent contractor.[6]  *See* TEX. R. APP. P. 38.1(i).  Therefore, we cannot conclude that the trial court abused its discretion by determining that Pattern Jury Charge 66.3 is inapplicable under these circumstances. Arnold further argues, in his reply brief, that because there was evidence that he was the landlord and AW was the tenant, the trial court should have submitted his requested question to the jury.  However, as stated above, Pattern Jury Charge 66.3 is required when there is evidence that an independent contractor has caused the negligent activity or premises defect, and Arnold has not provided any authority, and we find none, providing that in a landlord-tenant situation Pattern Jury Charge 66.3 is appropriate. Thus, we overrule Arnold's second issue.

### VI.  LOSS OF FUTURE EARNING CAPACITY

By his third issue, Arnold contends that there is no legally or factually sufficient evidence to support the jury's award of $465,000 in damages for lost future earning capacity.

### A.  Standard of Review

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."  *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).  We review the evidence in the light most

---

[6] *See Schievink v. Wendylou Ranch, Inc.*, 227 S.W.3d 862, 867 (Tex. App.— Eastland 2007, pet. denied) ("One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.").

13

favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact-finder could not. *Id.* at 821–22, 827.

A no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City of Keller*, 168 S.W.3d at 810. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407.

**B.     Applicable Law**

"Loss of future earning capacity is the plaintiff's diminished capacity to earn a living after the trial, which is always uncertain."[7]  *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d

---

[7] Earning capacity has been defined as the "ability and fitness to work in gainful employment for any type of remuneration, including salary, commissions, and other benefits, whether or not the person is actually employed." *Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

14

21, 35 (Tex. App.—Tyler 2003, pet. denied) (corrected op.). Due to its uncertainty, the jury has considerable discretion in determining the amount of the plaintiff's future earning capacity. *Id.* (citing *McIver v. Gloria*, 169 S.W.2d 710, 712 (1943); *Tri–State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 492 (Tex. App.—Houston [14th Dist.] 1989, no writ)). "To support an award of damages for loss of future earning capacity, the plaintiff must introduce evidence sufficient to allow the jury to reasonably measure earning capacity in monetary terms." *Id.* at 35–36 (citing *Bonney v. San Antonio Transit Co.*, 325 S.W.2d 117, 121 (1959); *City of Houston v. Howard*, 786 S.W.2d 391, 395–96 (Tex. App.—Houston [14th Dist.] 1990, writ denied)). The jury may base its award of loss of future earning capacity damages on several factors that may affect a person's capacity to earn a living, including stamina, efficiency, ability to work with pain, and the weakness and degenerative changes which naturally result from an injury and from long suffered pain. *Id.* (citing *Metropolitan Life Ins. Co. v. Haney*, 987 S.W.2d 236, 244 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)). The plaintiff must provide evidence of his or her capacity to work prior to the injury and that his or her capacity was impaired as a result of the injury. *Id.* "In determining what evidence is sufficient to support a claim of loss of earning capacity, no general rule can be laid down, except that each case must be judged upon its peculiar facts, and the damages proved with that degree of certainty of which the case is susceptible." *Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d 428, 436 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

**C.    Discussion**

Arnold acknowledges that Gonzalez presented evidence (1) that by working at two jobs the month before the accident, he earned a total of just over $2000, (2) of his

15

employment records from his janitorial employer, ABM, from the ten-month period prior to the accident, and (3) "he could not return to the type of physical labor he was performing before the accident." However, Arnold claims that Gonzalez provided no evidence (1) that Gonzalez was unable to return to a less strenuous workload than prior to the accident and (2) "of his life expectancy or how long he would have continued working." Thus, Arnold argues that the jury was required to speculate about Gonzalez's future earning capacity.

At trial, Gonzalez testified that prior to the accident, he "worked two jobs most of the time" and that he does not feel like the same person anymore because he can no longer work and do things around his home that he used to be able to do such as cut the trees outside. Gonzalez stated that his doctors did not allow him to work for an entire year after the accident and that as he understood it, he has not been authorized to go back to the type of work that he did prior to the accident. According to Gonzalez, he is no longer able to physically perform mechanical work like he did prior to the accident. Specifically, Gonzalez said, "No, I can't [hold the tools with the type of strength that I needed with my dominant arm the way I did before the] incident. I tried, but I can't hold the wrench or I can't hold the hammer. I just can't make a fist. This is all the movement that I can make, so I—it doesn't help me at all to work as I used to."

The trial court admitted two W-2 forms showing that in the month of January of 2010, Gonzalez made $943 at AW and $1116 as a janitor at another job site. Gonzalez testified that he was injured in February of 2010; therefore he could no longer work and received no further pay checks that year. However, prior to the accident, Gonzalez had planned on continuing working at both jobs and stated that he would have received a

raise at AW had he continued working there. Gonzalez testified that prior to 2010, he had been working as a janitor for a few years.[8] Regarding his position as a janitor, the trial court admitted a checklist that Gonzalez signed when he started working with a particular janitorial company in 2009. The checklist included a requirement that Gonzalez be able to clean 3,500 square feet per hour; however, Gonzalez stated that he can no longer do so due to his injury.

The trial court also admitted pictures of Gonzalez's arm, which depicted the scars of his injury, which appeared to be severe based on the amount of scarring.[9] Evidence was presented that when Gonzalez was injured, his arm was "hanging" off his body "like a rag" and that he had been hospitalized for thirty days. Gonzalez explained that one of the pictures showed where he had received a skin graft after he was injured and that another picture showed where skin had been removed from his leg to perform the skin graft. Gonzalez said that the doctors removed two skin grafts from the top of his leg and two from the bottom. According to Gonzalez, the process of removing the skin was almost as painful as when he injured his arm in the accident. Gonzalez showed his arm to the jury and demonstrated how much he was able to straighten his arm. Gonzalez testified that he cannot feel hot or cold on the surface of his grafted skin, but he does feel a lot of pain within the arm.

On cross-examination, Gonzalez testified that he had his mechanic's license and GED, which is a high school equivalency degree. Gonzalez said that prior to working at AW, he had worked for ten years at a steel company, then six months at a molding factory,

---

[8] Gonzalez testified that he was forty-nine at the time of the accident.

[9] The trial court admitted Gonzalez's medical records, and Gonzalez testified that he had five surgeries after the accident and that amputation had been discussed.

then one year at a car rental company, and then he worked as a self-employed mechanic for approximately two years. According to Gonzalez, while he worked as a mechanic, he helped his wife clean banks. Gonzalez worked as a fork-lift mechanic for AW for four months prior to his injury.

As stated above, Gonzalez provided evidence of his capacity to work prior to the injury, including evidence that he had worked as a janitor, at a steel company, a molding factory, and as a mechanic. Gonzalez also presented evidence that his capacity to work had been impaired as a result of the injury because he could no longer use his arm as he did prior to the accident and that he could no longer work as a mechanic or a janitor. *See Plainview Motels, Inc.*, 127 S.W.3d at 35.

Arnold further argues that the evidence is insufficient because Gonzalez merely showed that he worked at AW at minimum wage for a few months before the accident. However, Gonzalez testified about his extensive work history prior to the accident and prior to his employment at AW. Moreover, the trial court admitted Gonzalez's records of his prior employment as a janitor for the ten months prior to his employment with AW.[10] Thus, we conclude that Gonzalez introduced evidence sufficient to allow the jury to reasonably measure his earning capacity in monetary terms. *See id.*

Arnold also complains that Gonzalez provided no evidence of his life expectancy. However, this Court has already determined that "proof of life expectancy is not required to recover lost future earnings" and that "the jury may reach its own conclusion on life

---

[10] Arnold complains that these employment records are mostly illegible. However, our appellate record consists of copies. The original employment records that were admitted at trial have not been included in the appellate record. We are able to read some of the copies of Gonzalez's employment records included in the appellate record.

expectancy based on evidence of the injured person's age, health and physical condition prior to the injury, and the permanence of the injury." *Borden Inc. v. Guerra*, 860 S.W.2d 515, 524–25 (Tex. App.—Corpus Christi 1993, writ dism'd by agr.).

Arnold also argues that Gonzalez was required to show that he could not return to a less strenuous workload than he performed prior to the accident. The jury was asked to determine the amount of Gonzalez's loss of his future earning *capacity* if he had not been injured.[11] *See Strauss*, 67 S.W.3d at 435 ("Recovery for loss of earning capacity is not based on the actual earnings lost, but rather on the loss of capacity to earn money."); *see also Plainview Motels, Inc.*, 127 S.W.3d at 35. In other words, the jury examined several factors that they believed may have affected Gonzalez's earning capacity, including his stamina, efficiency, ability to work with pain, and the weakness and degenerative changes which naturally result from an injury and from long suffered pain and then determined how much he suffered in damages for that loss. *See Plainview Motels, Inc.*, 127 S.W.3d at 35.

Gonzalez testified that he is unable to use his arm without feeling pain and that although he tried to use his arm, he was unable to do many of the things he could do prior to the accident. Gonzalez stated that he is right-handed, and due to the injury, he is in the process of learning to use his left hand for simple tasks but he does not have the coordination in his left arm that he had in his dominant right arm. Gonzalez testified that his past jobs have required the use of both arms, including being a mechanic and that after his injury, he can no longer perform the job duties of a mechanic because it is too

---

[11] Moreover, there was conflicting evidence regarding whether Gonzalez is able to perform any type of work, including less strenuous work.

difficult with only one uninjured arm. The evidence established that Gonzalez has worked in jobs which require a certain degree of strength and stamina and that Gonzalez no longer has the strength and stamina he had prior to the accident. Gonzalez's physical therapist, Fortino Gonzalez, testified that Gonzalez has permanently lost strength and flexibility in various muscles in his arm. And his physician, Donna Mery, M.D., testified that Gonzalez's injuries caused permanent damage which restricted his use of his right arm. Moreover, Gonzalez testified that he has attempted to perform other types of less strenuous work, but has been unable to earn a living. In addition, vocational rehabilitation therapist and life care planner, Viola Lopez, performed various vocational tests on Gonzalez resulting in her opinion that he was not employable in any competitive marketplace due to his injuries and skillset. In Lopez's assessment, Gonzalez can no longer perform physically demanding jobs like those he had previous to the accident and he does not have the skill set to compete for non-physical jobs. Therefore, Gonzalez presented sufficient evidence for the jury to base its award, and as no general rule can be laid down regarding how the jury makes its loss of future earning capacity damages award, except that each case must be judged upon its peculiar facts, we conclude that the evidence of damages in this case was sufficient to support the jury's award. *See Strauss*, 67 S.W.3d at 436 (explaining that in *McIver v. Gloria*, 169 S.W.2d 710, 712 (Tex. 1943), the court upheld "the jury's award of loss of earning capacity, even though the exact amounts of [the plaintiff's] past earnings were not shown, because the evidence of the nature and extent of his farming operations and the kind and amount of the crops he produced provided the jury with sufficient facts to determine the proper amount of damages."). We conclude that there is more than a scintilla of evidence to support the

20

jury's finding on loss of future earning capacity. Thus, viewing the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact-finder could not, we conclude that the evidence is legally sufficient to support the jury's award of damages for loss of future earning capacity. *City of Keller*, 168 S.W.3d at 821–22, 827.

Next, Arnold argues that the evidence of the damages awarded to Gonzalez for loss of future earning capacity is factually insufficient because there was evidence, including, among other things, a videotape, showing that Gonzalez is still capable of performing physical work such as sweeping and lifting objects over his head. Arnold claims that Gonzalez admitted his involvement in constructing a house and garage on his land, and that he acquired a building permit listing himself as the contractor of that project. Arnold states that "[t]his evidence becomes overwhelming when weighed against Gonzalez's gap-riddled and sparse record of prior earnings."

We disagree with Arnold's interpretation of Gonzalez's testimony. Although Gonzalez stated that he and his wife are having a house and garage built on their property, he did not testify that he is building the structures himself. Gonzalez testified that he applied for a building permit and that the permit lists him as the contractor. However, Gonzalez denied that he was a contractor for the project and that the county had filled out the form that he merely signed. Moreover, Arnold has not pointed to any evidence in the record that Gonzalez's designation by the county as contractor on the building permit contradicts the evidence that he has suffered loss of his future earning capacity. Although Arnold emphasizes on appeal that the jury saw a video of Gonzalez sweeping and also lifting a screen door, he does not explain how these acts make the

21

jury's finding that Gonzalez lost his future earning capacity so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust,[12] especially given that Gonzalez testified that when he swept and lifted the screen door, he could not and did not use his right arm.[13] In addition, Dr. Mery viewed the videos and concluded that the videos did not show anything of medical significance in determining Gonzalez's impairment because the videos did not show the extent of pain Gonzalez experienced when he swept and lifted the screen door.

Next, Arnold argues that the evidence was factually insufficient because Gonzalez's damages for loss of future earning capacity was "not reduced to net present value or to account for taxes that Gonzalez would have paid on his earnings." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.091(a) (West, Westlaw through Ch. 46 2015 R.S.) (requiring claimant of loss of earnings to provide "evidence to prove the loss . . . in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to any federal income tax law"). However, "evidence of actual past-earnings is only one factor which may be considered in determining lost earning capacity" and Gonzalez provided his tax forms and employment records that both included deductions for taxes. *Big Bird Tree Serv. v. Gallegos*, 365 S.W.3d 173, 179 (Tex. App.—Dallas 2012, pet. denied). Because Gonzalez's past-earnings were only one factor for the jury to consider and the trial court admitted evidence of Gonzalez's net income, we cannot conclude that the evidence is insufficient for this reason. *See Plainview Motels, Inc.*, 127 S.W.3d at 35;

---

[12] Gonzalez presented evidence to show that he is unable to perform other less strenuous jobs, and Arnold points to no evidence in the record showing that someone who can sweep and who can lift a screen door is necessarily able to perform other more strenuous jobs.

[13] The video is not included in the appellate record, and Arnold does not complain of its omission. The record contains a description of Gonzalez's acts in the video, however.

22

*Border Apparel-East, Inc. v. Guardian*, 868 S.W.2d 894, 897 (Tex. App.—El Paso 1993, no writ) ("The central question to the proper disposition of the instant appeal is not what Appellee actually earned prior to her injury, but what her capacity to earn a livelihood actually was, and to what extent that capacity has been impaired.").

Accordingly, we conclude that the verdict is not so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Mar. Overseas Corp.*, 971 S.W.2d at 407. Further, the evidence is legally sufficient to support the verdict. We overrule Arnold's third issue.

## V. JOINT AND SEVERAL LIABILITY

By his final issue, Arnold contends that the trial court erred in imposing joint and several liability on Arnold for damages caused by Gonzalez's employer, AW. Arnold explains that under the general rule, the proportionate-responsibility statute allows the claimant to collect from the defendant only the percentage of damages found by the trier of fact, with only one "even potentially applicable" exception under section 33.013(b), which provides that when the defendant's percentage of responsibility is greater than fifty percent, then the defendant is jointly and severally liable for the damages recoverable by the claimant under that section. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.013(b) (West, Westlaw through Ch. 46 2015 R.S.). Arnold argues that the jury found AW negligent and attributed twenty percent of the responsibility for the accident to AW; thus, because AW is immune from suit under the TWCA, the damages the jury attributed to AW are not "damages recoverable by the claimant" within the meaning of section 33.013(b) of the Texas Civil Practice and Remedies Code.

The San Antonio court of appeals in *Bay Rock Operating Co. v. St. Paul Surplus Lines Insurance Co.*, cited by both parties, in interpreting section 33.013(b) stated that

> the plain language of section 33.013(b)(1) simply does not make the application of joint and several liability dependent upon whether or not another person, such as a responsible third party, can or will ultimately pay for its share of responsibility; the only requirement is that the liable defendant meets the threshold percentage of fault.

298 S.W.3d 216, 233 (Tex. App.—San Antonio 2009, pet. denied). In addition, the court explained that under the plain language of the statute, "If the threshold is met, a liable defendant bears not only its proportionate responsibility under section 33.013(a), but also assumes joint and several liability for all recoverable damages under section 33.013(b)(1)." *Id.* We find the *Bay Rock* court's interpretation of 33.013(b) persuasive, and agree that pursuant to section 33.013(b), so long as the threshold of more than fifty percent liability is met, then the defendant may be held jointly and severally liable, regardless of whether the responsible third party can or will pay for its share of responsibility. *See id.* at 232–233 (disagreeing with defendant's argument "that it is unfair for it to be held jointly and severally liable for all damages when another person has been assigned a percentage of responsibility, especially in those instances where, as here, the defendant is precluded from seeking contribution from the responsible third party").

Therefore, here although it appears that AW cannot or will not ultimately pay for its share of its responsibility due to the TWCA's immunity clause, under section 13.013(b), it does not matter. Arnold is still jointly and severally liable because the jury attributed sixty-five percent of the liability to him; thus, the threshold percentage of fault has been met. We overrule Arnold's final issue.

## VI. Conclusion

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
28th day of August, 2015.